**ANHEUSER–BUSCH, INC., Plaintiff,**

v.

**A–B DISTRIBUTORS, INC., Defendant.**

**No. 95–241–Civ–J–20.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 17, 1995.

George E. Schulz, Jr., Christopher J. Greene, Holland & Knight, Jacksonville, FL, Peter E. Moll, John J. Rosenthal, Carmine R. Zarlenga, Howrey & Simon, Washington, DC, for plaintiff Anheuser–Busch, Inc.

Stephen D. Busey, James J. Taylor, Jr., Smith, Hulsey & Busey, Jacksonville, FL, Charles Cook Howell, III, Howell, O'Neal & Johnson, Jacksonville, FL, for defendant A–B Distributors, Inc.

Gregory L. Scott, Nason, Gildan, Yeager, Gerson & White, P.A., West Palm Beach, FL, for movant Tonet Company, Inc.

### ORDER

SCHLESINGER, District Judge.

Before the Court is Motion of Plaintiff Anheuser–Busch, Inc. for Preliminary and Permanent Injunction to Stop Defendant's Post–Termination Use of Anheuser–Busch Trademarks (Doc. No. 94, filed September 29, 1995). Defendants' Responsive Brief in Opposition to Motion for Preliminary Injunction (Doc. No. 106) was filed October 16, 1995. A Preliminary Injunction Hearing was held before the undersigned on October 20, 1995.

■ A preliminary injunction is an "extraordinary and drastic remedy" and should not be granted unless the movant meets its burden of persuasion with respect to each of the following prerequisites: (1) a substantial likelihood of success by the movant on the merits; (2) that the movant will suffer irreparable harm unless the injunction issues; (3) that the threatened injury to the movant outweighs any threatened harm the injunction may cause the opposing party; and (4) that the injunction, if issued, "will not disserve the public interest." *Bryan v. Hall Chemical Co.*, 993 F.2d 831, 835 (11th Cir. 1993) (citing *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)).

Plaintiff, Anheuser–Busch, Inc. (Anheuser–Busch), has brought this against Defendant, A–B Distributors, Inc. (A–B Distributors), for federal and state trademark infringement and unfair trade practices, in violation of the Trademark Act of 1946 (commonly known as the Lanham Act), 15 U.S.C. § 1051 *et seq.*, specifically §§ 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), Florida's anti-dilution statute, Fla.Stat. § 495.151, and Florida's deceptive and unfair trade practices act, Fla.Stat. § 501.201; and for breach of the agreement between the parties and of the implied covenant of good faith and fair dealing.[1]

---

1. Plaintiff did not raise the claims for violation of federal and state unfair trade practices and breach of implied covenant of good faith and fair dealing in its Motion for Preliminary and Permanent Injunction (Doc. No. 94). Thus, Defendant did not have an opportunity to respond to the

For more than 35 years, until July 24, 1995, A–B Distributors was the exclusive authorized Anheuser–Busch wholesaler for the Jacksonville/Lake City, Florida areas. The relationship between the parties was governed by a written contract, the Anheuser–Busch, Inc. Wholesaler Equity Agreement (Equity Agreement).[2] On March 31, 1995, Anheuser–Busch notified A–B Distributors that it was terminating the Equity Agreement for engaging in fraudulent conduct. Plaintiff alleged that Defendant was fabricating and falsifying records of sales calls, misrepresenting the accuracy and authenticity of its records to Anheuser–Busch, and repackaging and selling overage Anheuser–Busch beer as fresh beer. The termination was effective on July 24, 1995, following this Court's denial of Defendant's second request for a preliminary injunction for failure to establish that it had a substantial likelihood of prevailing on the merits of either Plaintiff's Complaint or on its Counterclaim (Doc. No. 59, dated July 24, 1995). Defendant stopped selling and distributing Anheuser–Busch products at that time.

Plaintiff seeks a preliminary and permanent injunction enjoining A–B Distributors from: (1) displaying any of Anheuser–Busch's trademarks; (2) using the trademark "A–B" in connection with the name of its business; and (3) representing to any person that it is associated with Anheuser–Busch. Motion of Plaintiff for Preliminary and Permanent Injunction (Doc. No. 94) at 2. The specific objects of the requested injunctive relief concern: (1) a billboard located in a local minor-league baseball stadium on which the name "A–B Distributors" is printed along with one of Plaintiff's beer trademarks, Budweiser; (2) forty-plus beer trucks with Anheuser–Bush trademarks on the trailers, which are parked in the now-idle A–B Distributors warehouse; and (3) the use of "A–B" in Defendant's corporate name, A–B Distributors, Inc. At the hearing held on October 20, 1995, the parties stipulated that the stadium sign has been removed; thus, it is not at issue. It is undisputed that Plaintiff

owns the trademarks "Budweiser," "Michelob," "Busch," "Bud Light," and "A B" (the latter trademark does not have a hyphen; however, there is a space between the two initials).

To determine the likelihood of success on the merits, the court looks to the standards proscribed by substantive law.

## I. The Equity Agreement

Plaintiff contends that Defendant's right to use Plaintiff's trademarks ceased upon termination of the Equity Agreement, and that its continued use of the "A–B" name and display of Plaintiff's logos on its trucks is a breach of that agreement. Section 9, entitled "Trademarks of Anheuser–Busch," provides, in pertinent part:

> Wholesaler is hereby granted a limited, nonassignable and nontransferable *right to use Anheuser–Busch's trademarks and trade names in distributing, advertising and promoting the sale of the Products,* but only in accordance with Anheuser–Busch's policies regarding the use of its trademarks and trade names. *The right conferred herein* shall cease and terminate upon termination of this Agreement.

> Anheuser–Busch's trademarks and trade names, however, shall remain the sole and exclusive property of Anheuser–Busch. Anheuser–Busch reserves all rights including the right to license the use of its trade names, designs, brand names, labels, and promotional slogans or trademarks on merchandise, goods, items or services, including but not limited to the Products sold and distributed hereunder.

> It is specifically agreed that the Wholesaler, *prior to leasing, selling or otherwise transferring to another or putting to a use other than that originally intended any vehicles,* warehouse facilities, equipment, office supplies or other property having had affixed temporarily or permanently trademarks or trade names of Anheuser–

merits of these claims, and the Court will not consider them in granting or denying Plaintiff's motion.

2. Counsel for Plaintiff conceded during oral argument that the Equity Agreement encompasses the entire agreement between the parties.

Busch, shall remove, obliterate or eliminate said trademarks or trade names.

Emphasis added.

■ Plaintiff is correct that Defendant's right to use Anheuser–Busch's trademarks and trade names *in distributing, advertising and promoting the sale of Anheuser–Busch beer* was terminated upon termination of the Equity Agreement. It is uncontested that A–B Distributors is no longer distributing, advertising, or promoting the sale of Plaintiff's (or anyone else's) beer. The use of the A–B name, therefore, does not violate the Equity Agreement, since that name is not being used in the beer market.

■ Likewise, since the parked trucks with Plaintiff's logos are not being *leased, sold or otherwise transferred to another or putting to a use other than that originally intended* (to distribute Plaintiff's beer), there is no contract violation. It is clear that unless Defendant sells or otherwise disposes of the trucks, it is not required by the Equity Agreement to remove the trademarks or trade names.

## II. The Lanham Act

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), provides, in relevant part, a cause of action to a registrant against:

(1) Any person who shall, without the consent of the registrant—

(a) *use in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark *in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion,* or to cause mistake, or to deceive. . . .

Emphasis added.

■ To establish a claim for trademark infringement, a plaintiff must show: (1) its mark was used in commerce by the defendant without the registrant's consent, and (2) the unauthorized use of the trademark was likely to cause confusion or mistake among the relevant public. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). *See also Contemporary Restaurant Concepts, Ltd. v. Las Tapas– Jacksonville, Inc.;* 753 F.Supp. 1560, 1563 (M.D.Fla.1991); *Varitronics Systems, Inc. v. Merlin Equipment, Inc.,* 682 F.Supp. 1203, 1206 (S.D.Fla.1988). The court must consider the likelihood of confusion from the standpoint of the typical buyer of the product, in this case, retail customers of Anheuser– Busch in the Jacksonville/Lake City market. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 389 (5th Cir. 1977).

Plaintiff contends that Defendant's unauthorized use of Anheuser–Busch's trademarks on its trucks and in its corporate name misleads the public into believing that it and its goods and services are approved by, or affiliated with, Anheuser–Busch. As indicated, the only relevant "public" in this case are retail customers who sell Plaintiff's beer, who formerly were serviced by A–B Distributors.

■ It is undisputed that Plaintiff has valid registrations for the trademarks printed on the trucks parked outside Defendant's former beer distribution warehouse. Nonetheless, Plaintiff has not shown a likelihood of success on the merits of a trademark infringement violation with respect to the trucks parked at Defendant's warehouse because they are not "in use." The warehouse solely was used for Defendant's beer distribution business and is now idle. There is no violation of the Lanham Act because the trucks are not "used in commerce" or "in connection with the sale, distribution, or advertising" of Plaintiff's products. The Court need not reach the issue of whether Defendant's *use* of Plaintiff's trademarks causes a likelihood of confusion among retailers of Anheuser–Busch products since the trademarks are not being *used* in commerce by Defendant.

Unlike the idle trucks, however, the corporate name "A–B Distributors" is currently being "used in commerce." A–B Distributors is involved in other businesses (cattle ranching and real estate sales/leasing) in which it uses its corporate name. Moreover, the name is still embossed on approximately fifteen white station wagons used by the

former beer sales force. These vehicles are still being driven in the Jacksonville area by A–B Distributors' personnel, in some cases to visit former A–B retail customers, who are currently being serviced by a newly-appointed Anheuser–Busch distributor. In addition, the corporate name is printed on the company letterhead and business cards,[3] and on business signs at Defendant's now-idle warehouse.

Defendant does not contest that Anheuser–Busch has a valid registered trademark for "A B." Defendant contends, among other things, however, that because "A B" is a weak mark, it is not entitled to wide protection under federal trademark law, and that Defendant's use of the corporate name "A–B Distributors" does not infringe on the "A B" mark because there is little or no likelihood of confusion in the marketplace between the two marks.

■ The central inquiry under the Lanham Act applicable to the issue of whether Defendant's use of "A–B" in its corporate name infringes on Plaintiffs "A B" trademark, is whether there is a 'likelihood of confusion' between the two servicemarks. *See Freedom Savings and Loan Ass'n v. Way,* 757 F.2d 1176, 1179 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985); *Ice Cold Auto Air of Clearwater v. Cold Air & Accessories, Inc.,* 828 F.Supp. 925, 934 (M.D.Fla.1993). The following factors aid the court in deciding whether there is a likelihood of confusion: "(1) the type of mark at issue; (2) similarity of marks; (3) similarity of product or services; (4) identity of purchasers and similarity of retail outlets; (5) similarity of advertising campaigns; (6) the defendant's intent; and (7) actual confusion." *Ice Cold Auto Air,* 828 F.Supp. at 934–35 (citing *Freedom Savings and Loan Ass'n,* 757 F.2d at 1182–83). The court, however, is not required to specifically mention each of these factors in making its decision. *See University of Georgia Athletic Ass'n v. Laite,* 756 F.2d 1535, 1542 (11th Cir.1985) (analyzing the factors in the context of a claim of unfair competition).

■ Rather than simply determining whether a majority of these factors indicate a likelihood of confusion, a court must "evaluate the weight to be accorded the individual factors and then make its ultimate decision." *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). An analysis of fewer than all seven factors may support, or negate, a finding of likelihood of confusion. *See University of Georgia Athletic Ass'n,* 756 F.2d at 1543. In the Eleventh Circuit, the type of mark and evidence of actual confusion are the most important factors, *Dieter v. B & H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir.1989), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990). *See also Roto–Rooter Corp. v. O'Neal,* 513 F.2d 44, 45–46 (5th Cir.1975) ("While proof of actual confusion is not required to sustain a claim of infringement, the view of this court is that it is the best evidence of likelihood of confusion."). Analysis of these two factors alone, as discussed herein, leads the Court to conclude that there is no likelihood of confusion between the two marks. This determination is supported by the lack of similarity between the marks "A B" and "A–B Distributors," which is "determined on the basis of the total effect of the designation, rather than on a comparison of individual features," *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 261 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); and the lack of similarity of products, services, purchasers, or retail outlets, now that Defendant is no longer in the beer distribution business.

■ In analyzing the type of mark, the Court must determine whether the mark is strong or weak in order to determine the level of protection to be extended to the mark. *See Ice Cold Auto Air,* 828 F.Supp. at 935. As the Eleventh Circuit explained:

> The more distinctive a plaintiff's servicemark, the greater the likelihood that consumers will associate the registered trademark and all similar marks with the registered owner. The law therefore provides

---

**3.** Other than the "A–B" in its name, it is uncontested that Defendant has removed all Anheuser-

Busch trademarks from its letterhead and business cards.

the greatest protection to strong and distinctive servicemarks; the strength of a mark depends on *the extent of third party usage* and the relationship between the name and the service or good it describes. *Freedom Savings and Loan Ass'n,* 757 F.2d at 1182 (emphasis added). A strong trademark is one that is rarely used by parties other than the owner of the trademark, and thus is closely associated with the owner of the mark. *Amstar,* 615 F.2d at 259. In *Amstar,* the former Fifth Circuit vacated a preliminary injunction which had enjoined the use of "Domino's Pizza" for infringing on the Amstar mark, "Domino Sugar." The court held that extensive third-party usage and registration of "Domino"—72 third-party registrations of the mark "Domino" in the U.S. Patent Office and 15 third-party uses of the "Domino" mark over the years—could not "be so readily dismissed." The court noted that the impact of such evidence was not dispelled "merely because 'Domino' cigarettes and matches are not leading brands, or because some uses of the mark 'Domino' by third parties have not been related to food products." 615 F.2d at 259.

Defendant presented evidence of extensive use of "A B" in businesses in the Jacksonville area alone.[4] Notably, none of these entries include one representing Plaintiff. As stated in comment g to the Restatement of Torts § 729 (1938), "The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion...." Even ownership of well-known marks has not precluded other uses of the mark, *e.g., Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225 (3rd Cir.1978) (plaintiff's ownership of the mark "Scott" as applied to paper products did not preclude defendant's use of "Scott" on furniture polish); *Amstar,* 615 F.2d at 260 (notoriety of "Domino Sugar" did not preclude defendant's use of "Domino's Pizza").

Trademark law provides the greatest protection to strong and distinctive servicemarks. *Freedom Savings and Loan Ass'n,*

757 F.2d at 1182. There is nothing particularly distinctive about plaintiff's mark "A B." *See American Optical Corp. v. American Olean Tile Co.,* 1974 WL 20261, 185 U.S.P.Q. 405, 409 (S.D.N.Y.1974) (holding no infringement on mark AO because the initials "are letters in the alphabet available for use by everyone ... [and t]here is nothing about those initials to conjure up instantaneously the plaintiff American Optical Co."). Plaintiff has presented little evidence that "A B" is closely identified with Anheuser–Busch, i.e., that the mark has acquired secondary meaning, which would afford it trademark protection. *G. Heileman Brewing Co. v. Anheuser–Busch, Inc.,* 873 F.2d 985, 992 (7th Cir.1989). The mark is merely descriptive, and must be characterized as a weak mark. *Id.* Generally, courts classify initials as descriptive "if the mark imparts information directly." 873 F.2d at 996–97 (holding that Anheuser–Busch did not establish that LA, which describes a characteristic that it shares with other beers of low alcoholic content produced by other brewers, was a protectible trademark).

■ During oral argument, Plaintiff contended that because "A B" is registered under Section 8 and Section 15 of the trademark law, it is a "very strong trademark." Even though "A B" is a registered trademark, "registration of a trade-mark confers only procedural advantages and does not enlarge the registrant's substantive rights." *Best & Co. v. Miller,* 167 F.2d 374, 376 (2d Cir.), *cert. denied,* 335 U.S. 818, 69 S.Ct. 39, 93 L.Ed. 373 (1948). Plaintiff also argued in the hearing that, similar to the court's finding that "Safeway" was the dominant theme in the service mark "Safeway Stores," *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1167 (11th Cir.1982), "A B" is the dominant theme of Anheuser–Busch. As discussed, Plaintiff presented no evidence that the mark "A B" is synonymous with Anheuser–Busch among local Anheuser–Busch retailers, other than the testimony of an A–B Distributors employee that, during the time it was distributing Plaintiff's beer,

---

4. Among the thirteen third-party users in Jacksonville submitted by Defendant are: AB Coleman Mortuary; AB Curls & Associates, Inc.; AB Dick; AB Essa Insurance Agency; AB Glass & Mirror; AB Painting Company; AB Towing.

A–B Distributors was looked upon as "standing in the shoes of Anheuser–Busch in this marketplace."[5] That alone is insufficient proof that the mark "A B" has acquired secondary meaning among retailers of Anheuser–Busch beer in the Jacksonville-area market. Moreover, *Safeway* is factually distinguishable from this case in other ways. The court's finding of a likelihood of confusion between Safeway Stores and Safeway Discount Drugs was based on its several conclusions that "the mark is relatively strong; that its use by Safeway and Discount is in similar designs; that both Safeway Stores and Discount have the same general retail operation with some overlap of goods and customers; that they advertise in the same kind of media; that Safeway Stores does have a substantial business presence in Florida, even if not in grocery retailing; and that there is some indication, though slight of actual confusion. 675 F.2d at 1167. As discussed *infra*, those factors were answered in the negative in this case.

▇▇▇ It is well established that "falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to the source or sponsorship constitutes infringement." *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir.1975). Plaintiff has cited cases in which courts have enjoined former distributors and franchisees from using a manufacturer's trademarks subsequent to expiration or termination of the franchise contract, *e.g.*, *Howard Johnson Co., v. Khimani*, 892 F.2d 1512 (11th Cir.1990); or where courts have held that post-termination use of a registered trademark violated federal trademark law, *e.g.*, *Burger King Corp.*, 710 F.2d at 1492. Those cases are distinguishable from the case before this Court, however, because they involved franchisors who were attempting to remain in the same business under the franchisor's or a similar name after their franchise agreement had

been terminated. In *Burger King*, the court found that a former Burger King restaurant which was still "adorned with the Burger King trademarks undoubtedly would [lead a restaurant patron to] believe that [Burger King Corporation] endorses the operation of the restaurant." 710 F.2d at 1492. The court held that this type of infringement was cognizable under the Lanham Act. *Id.* In *Khimani*, which is also distinguishable in that the court was deciding whether to uphold a contempt finding after the defendant had *violated* an injunction, the former Howard Johnson franchisor was attempting to operate a new hotel under the name "H.J. Inns." The court held that the similarity of the names, type of businesses, location (the same), customers, and even color schemes would contribute to the likelihood of consumer confusion that the new hotel was affiliated with Howard Johnson's. 892 F.2d at 1517.

In this case, however, A–B Distributors is not attempting to continue to use its corporate name in the retail beer market to capitalize on the reputation of the Anheuser–Busch name or cause confusion among retailers or restaurants who once purchased Plaintiff's beer from them. Defendant uses its corporate name in totally unrelated businesses. Defendant is no longer selling Plaintiff's, or anyone else's, beer. In addition, Plaintiff has submitted no evidence of actual confusion among retailers. In fact, the evidence before the Court, a letter dated July 25, 1995, from Robert D. Reed, Chairman and President of A–B Distributors, addressed to "Retail Customer," would tend to negate any claim of confusion among retailers. In that letter, Mr. Reed informed all twenty-three hundred of his former retail customers that:

> Today, Anheuser–Busch notified A–B Distributors that it will no longer do business with us. Anheuser–Busch's action has forced us *to immediately cease servicing our retail customers.*

---

5. The language actually was used by Plaintiff and, somewhat reluctantly, agreed to by Defendant. During his deposition taken by Plaintiff, Ralph Holliday, an A–B Distributors salesperson, was asked by Plaintiff: "And would you also agree with me that for all practical purposes, A–B Distributors was looked upon as standing in the shoes of Anheuser–Busch in this marketplace, in your territory?" Mr. Holliday answered, "I suppose you could say that." Deposition of Ralph Holliday, August 16, 1995; Plaintiff's Exhibit No. 4 to Preliminary Injunction Hearing, October 20, 1995.

We are presently in litigation with Anheuser–Busch over this situation, and we are confident we will prevail when the case goes to trial *next March. We hope at that time* that we can return to service you as we have done now for over 35 years.

All of us at A–B Distributors are sincerely grateful for the opportunity of doing business with you these many years. We appreciate the support you have given us.

Emphasis added.

Plaintiff takes exception to language in the second paragraph of Mr. Reed's letter expressing hope that it might one day be in the business of distributing beer, which Plaintiff claims is intended to cause confusion and uncertainty in the marketplace. If anything, the letter clarifies that, as of the date of that letter and at least until March 1996, the estimated time of the trial, A–B Distributors is no longer distributing Anheuser–Busch products. Likewise, evidence that A–B Distributors supervisors are visiting their former retail customers, in station wagons printed with Defendant's corporate name, to see how they are doing with their new beer distributor, further serves to confirm that Defendant is no longer selling beer. The Court agrees with Defendant that Mr. Reed's, and other A–B Distributors personnel's expression of hope that A–B Distributors will prevail in this case and once again distribute beer is not sufficient evidence of intent to confuse.

### III. Florida Anti-dilution Statute

█ Even though the Court finds that Plaintiff is not likely to succeed on the merits of a claim under the Lanham Act due to insufficient evidence of the likelihood of confusion, Plaintiff can demonstrate success on the merits under Florida law, "notwithstanding the absence of ... confusion as to the source of goods or services," if Plaintiff makes a showing that there "[1] exists a likelihood of injury to business reputation or [2] of dilution of the distinctive quality of the mark, trade name, label or form of advertisement of the prior user...." Fla.Stat. § 495.141. Since the Court has already found that Plaintiff's "A B" mark is not similar to Defendant's corporate name, "A–B Distributors," that it is not a distinctive mark, and that extensive third party usage has rendered the mark a weak one (see discussion *infra*), Plaintiff cannot demonstrate the likelihood of prevailing on the merits of the dilution prong, [2], of the statute. *See Amstar,* 615 F.2d at 265 (applying same analysis to similar anti-dilution statute under Georgia law); *see also Tally–Ho, Inc. v. Coast Community College District,* 889 F.2d 1018, 1024 (11th Cir.1989) (anti-dilution statute's purpose is to prevent the weakening of a *distinctive* trademark and to "protect[ ] the owners of such *strong, distinctive marks* from the diminution of consumer goodwill by competitors or non-competitors") (emphasis added); *accord Freedom Savings and Loan Ass'n,* 757 F.2d at 1186. Nor does the Court find that Plaintiff has presented sufficient evidence for the Court to find that it will succeed on the merits of a claim of a likelihood of injury to its business reputation. Plaintiff has remedies at law on that issue.

Plaintiff has failed, as noted above, to persuade the Court that it has a substantial likelihood of prevailing on the merits of either the contract claim, Lanham Act claim, or Florida anti-dilution claim. An injunction is an extraordinary remedy and only should be granted if the moving party has shown the existence of the *four* injunction factors. *Cuban American Bar Ass'n v. Christopher,* 43 F.3d 1412, 1424 (11th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 299, 133 L.Ed.2d 205 (1995). The Court need not consider whether there is substantial threat of irreparable injury to Plaintiff, whether its injury outweighs the injury to Defendant, or whether the injunction would disserve the public interest. Because Plaintiff has failed to show that it has a substantial likelihood of success on the merits, it is not entitled to the relief it seeks. *Id.*

Accordingly, in light of the evidence submitted by the parties, it is **ORDERED AND ADJUDGED** that the Motion of Plaintiff Anheuser–Busch, Inc. for Preliminary and Permanent Injunction to Stop Defendant's Post–Termination Use of Anheuser–Busch Trademarks (Doc. No. 94, filed September 29, 1995) is **DENIED.**

DONE AND ENTERED.