**MICHAEL CARUSO & CO, INC., Plaintiff,**

v.

**ESTEFAN ENTERPRISES, INC. and Bongos Cuban Cafe, Inc., Defendants.**

**No. 97–2993–CIV–KING.**

United States District Court, S.D. Florida.

Feb. 12, 1998.

**1456**

Wilfredo A. Rodriguez, Holland & Knight, Miami, FL, Leslie S. Spitalney, Holland & Knight, Washington, DC, Gary S. Phillips, Beverly Hills, CA, David K. Friedland, Coral Gables, FL.

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Motion for Preliminary In-

junction, filed October 1, 1997. Plaintiff filed a response on December 10, 1997, and the Court held a hearing on the motions on January 8, 9, and 12, 1998.

### Factual Background

Plaintiff is an eighty-six person company that designs and manufactures retail clothing under the brand name "Bongo." Defendants own and operate a "theme" restaurant/bar, specializing in Cuban cuisine, named "Bongos Cuban Cafe."

Plaintiff received its first trademark for "Bongo" in 1985. The trademark applied to clothing, primarily jeans, skirts, pants, shirts, jackets, vests, jump suits, and blouses. Since then, Plaintiff has received several other trademarks for the display of "Bongo" on different kinds of retail apparel. Plaintiff's signature product is a classic American blue jean, which it offers in a variety of designs and colors. Plaintiff's clothing is sold throughout the United States, as well as in some foreign countries. The vast majority of Plaintiff's products are marketed and sold to young women (also known as "juniors"). Plaintiff sells its products through department stores such as Sears, J.C. Penney, and Macy's and through smaller retail clothing stores such as Denim Works, Denim World, and Jeans Warehouse. Plaintiff advertises primarily through print advertisements in women's and teen fashion magazines and some television advertisements on the MTV music television network. Plaintiff's products display the word "Bongo" in a variety of type faces, often accompanied by the words "Jeans" and "Authentic" and the slogans "Always American Made," "Fine American Jeans," "Authentic American," and "An American Classic." Since the company's inception, Plaintiff has sold a total of approximately $1.5 billion in retail sales.

Defendants' 500 seat Cuban-theme restaurant opened for business on September 14, 1997, in Downtown Disney, Orlando. Downtown Disney is an entertainment-oriented complex of the Walt Disney World Resort, consisting of various "theme" restaurants and bars, a multiplex movie theater, gift and specialty stores, and other entertainment establishments. There are no other "Bongos Cuban Cafes" in existence. Defendants market their restaurant as a uniquely Cuban

entity. This Cuban theme is emphasized by the restaurant's design, including the display of bongo drums on the furniture and decor, and the restaurant's menu, which is comprised of exclusively Cuban cuisine. In addition to cuisine, Defendants sell souvenir merchandise, including clothing (i.e. T-shirts, sweatshirts, and hats), in a gift shop adjoining the main dining area. Defendants also sell an array of non-clothing souvenir merchandise like mugs, black beans, cigars, ash trays, and drinking glasses. As of November 30, 1997, Defendants experienced total sales of $2,462,849.24. Of that amount, $167,640.00 (6.8% of total sales) is attributable to the sale of souvenir clothing items. Defendants' merchandise products display the word "Bongos" in large type in connection with three logos: (1) a man dressed in Cuban-style clothing playing bongo drums, (2) a woman dressed in Cuban-style clothing dancing and playing maracas, and (3) the silhouette of hands superimposed over both "O"s in BONGOS to convey the impression of hands playing bongo drums. The words "Cuban Cafe" appear on all the merchandise in smaller type directly under "Bongos."

Plaintiff filed suit in this Court on September 17, 1997, alleging: (1) trademark infringement in violation of the United States Trademark Act of 1946 (also known as the Lanham Act), 15 U.S.C. §§ 1051–1127 ("Lanham Act"); (2) unfair competition in violation of section 1125(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark dilution in violation of both section § 1125(c) of the Lanham Act, 15 U.S.C. § 1125(c) ("Federal Dilution Act"), and Fla.Stat. § 495.151 ("Florida Dilution Act"); and (4) common law unfair competition. Plaintiff now seeks to enjoin Defendants from using in any manner the mark "Bongos Cuban Cafe."

### Legal Standard

To prevail on a motion for preliminary injunction, the plaintiff must establish that: (1) there is a substantial likelihood of success on the merits of the claims; (2) he will suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant as a result of the injunction; and (4) granting the injunction would not be

adverse to the public interest. *See Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1561–62 (11th Cir.1989), *aff'd sub nom. McNary v. Haitian Refugee Center,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Because a preliminary injunction is a "drastic remedy," the plaintiff bears the burden to "clearly establish" each of the four elements. *Cafe 207 v. St. Johns County,* 989 F.2d 1136, 1137 (11th Cir.1993); *see also Anheuser-Busch, Inc. v. A–B Distribs., Inc.,* 910 F.Supp. 587, 589 (M.D.Fla.1995). As this Court has previously stated, a preliminary injunction "is an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites. The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits." *Tefel v. Reno,* 972 F.Supp. 623, 633 (S.D.Fla.1997) (King, J.).

### Analysis

■ At the outset, the Court observes that Plaintiff has requested truly far-reaching relief: the prohibition of Defendants' use in any manner of the mark "Bongos Cuban Cafe." Even if the Court were to find that the use of the mark "Bongos Cuban Cafe" in connection with Defendants' souvenir clothing and even non-clothing merchandise infringes upon Plaintiff's trademark, such a finding would not justify the clearly over broad remedy of enjoining Defendants from using the mark in any context. *See Lever Bros. Co. v. United States,* 981 F.2d 1330 (D.C.Cir.1993) (vacating injunction on grounds of overbreadth). Nonetheless, the Court will determine whether preliminary injunction of any scope is warranted by applying the four-part preliminary injunction test to the facts of this case.

### I. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

#### A. Trademark Infringement and Unfair Competition

■ In order to show substantial likelihood of success on the merits of its trademark infringement and unfair competition

claims under the Lanham Act and common law, Plaintiff must present compelling evidence that there is a likelihood that consumers will be confused about the relationship or affiliation between Plaintiff's products and Defendants' restaurant and merchandise. "Likelihood of confusion" means probable confusion rather than mere possible confusion. *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.,* 697 F.2d 1352, 1356 n. 2 (11th Cir.1983). The Eleventh Circuit has developed a seven factor test to determine whether there is a likelihood of confusion between two trademarks. The reviewing court must evaluate: (1) the strength of the plaintiff's mark, (2) the similarity of the parties' marks; (3) the similarity of the products or services the marks identify; (4) the similarity of the parties' retail outlets and purchasers; (5) the similarity of advertising media used; (6) the existence of actual confusion; and (7) the defendant's intent. *See Dieter v. B & H Indus. of Southwest Fla., Inc.,* 880 F.2d 322 (11th Cir.1989); *Freedom Sav. & Loan Ass'n v. Way,* 757 F.2d 1176 (11th Cir.1987); *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.,* 716 F.2d 833 (11th Cir.1983). The Court will consider each factor in turn.

#### 1. Strength of Plaintiff's Mark

■ "The primary indicator of trademark strength measures the logical correlation between a name and a product. If a seller of a product or service would naturally use a particular name, it is weakly protected." *Freedom Sav. & Loan Ass'n v. Way,* 757 F.2d 1176, 1182 (11th Cir.1985). The Court first observes that Plaintiff's mark is a common English word. The word "bongo" most commonly means "one of a pair of connected tuned drums that are played by beating with the hands." *The American Heritage Dictionary* 158 (2d. College ed.1985). A mark incorporating a common English word is inherently weaker than a mark consisting of fanciful and fictitious terms. *See Dieter,* 880 F.2d at 327 ("Generic terms represent the weaker end of the [trademark] spectrum, and arbitrary terms represent the stronger."); *Sun Banks of Fla. v. Sun Fed. Sav. & Loan,* 651 F.2d 311, 316 (5th Cir.1981)[1] (common English term is a

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit

adopted as binding precedent all decisions of the

weak mark); *Alpha Indus., Inc. v. Alpha Tube & Shapes, Inc.,* 616 F.2d 440, 445–46 (9th Cir.1980) ("A 'weak' mark is a mark that is a meaningful word in common usage or is merely a suggestive or descriptive trademark. A strong mark is entitled to a greater degree of protection than is a weak one, because of its unique usage."). The rationale underlying this principle is that courts should not grant the holder of a mark that consists of a common English word a monopoly on that term outside the user's field. *See Major League Baseball Props., Inc. v. Sed Non Olet Denarius, Ltd.,* 817 F.Supp. 1103, 1119 (S.D.N.Y.1993).

■ Defendants respond that the fact that the term "bongo" is arbitrarily applied to retail clothing makes the mark stronger. Courts in this Circuit have held, however, that even arbitrarily applied common terms are of weaker trademark significance. In *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 260 (5th Cir.1980), the court observed that although a common term's "application . . . may be arbitrary, it is still not to be accorded the same degree of protection given such coined and fanciful terms as 'Kodak' or 'Xerox.'" *See also Sun Banks,* 651 F.2d at 315 (arbitrariness "alone, however, does not precipitate absolute protection"); *Major League Baseball,* 817 F.Supp. at 1119 ("common English words, even if used arbitrarily in application to a user's services, are of weak trademark significance outside their field of operations") (citing *Sun Banks,* 651 F.2d at 316).

■ Plaintiff also contends that the fact that two of his marks are now "incontestable"[2] makes them inherently strong marks and cites the Eleventh Circuit's holding in *Dieter* for this proposition. 880 F.2d at 328–29. In *Dieter,* the Court held that "[o]nce a mark has achieved 'incontestable' status, its validity cannot be challenged on the grounds that it is merely descriptive." *Id.* at 328. In the instant case, Defendants are not contending that "bongo" is a descriptive mark but rather that its common usage renders it weak. Moreover, the Eleventh Circuit concluded that a mark's "incontestable status is a factor to be taken into consideration in likelihood of confusion analysis," but not that incontestable status alone is dispositive of a mark's strength. *Id.* at 329. Indeed, many courts have held that while incontestability precludes a defendant from arguing that a mark is merely descriptive, incontestability does not render a mark strong. For example, in *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* the Fourth Circuit observed that although "the alleged infringement of an incontestable trademark cannot be defended on the ground that the trademark is merely descriptive . . . incontestability alone does not establish that the trademark is strong and therefore likely to cause the consumer confusion necessary for a finding of trademark infringement." (citations omitted). 43 F.3d 922, 934 (4th Cir.1995); *see also Miss World (U.K.) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1448–49 (9th Cir.1988) ("incontestable status does not alone establish a strong mark"); *Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166, 171 (5th Cir.1986) (incontestable status does not preclude defendant from arguing that mark is weak), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Majorica S.A. v. Majorca Int'l, Ltd.,* 687 F.Supp. 92, 97 (S.D.N.Y.1988) (incontestability does not relieve registrant of requirement of proving likelihood of confusion).

■ Plaintiff's mark is further weakened by extensive third party use of the term "bongo." *See Sun Banks,* 651 F.2d at 315–16 (finding term "sun" a weak mark in light of extensive third party use); *Amstar Corp.,* 615 F.2d at 260 (finding term "domino" of weak trademark significance because of third party use); *Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 505 (5th Cir. 1979) (holding that wide use of mark "World" resulted in little likelihood of confusion); *El Chico, Inc. v. El Chico Cafe,* 214 F.2d 721, 725 (5th Cir.1954) (holding that 27 trademark registrations of 'El Chico,' made term weak trade name deserving limited protection).

former Fifth Circuit issued before October 1, 1981.

2. Five years after registering a mark, the holder may file an affidavit under § 1065 of the Lanham Act and have its mark declared "incontestable." 15 U.S.C. § 1065(3).

Defendants' evidence reveals that at least seventy-five businesses other than Plaintiff's throughout the United States have incorporated "bongo" or "bongos" into their marks. There are presently a total of seventeen state and federal registrations and two pending registrations, not including Plaintiff's registrations, for marks incorporating the terms. Before Plaintiff began using the "Bongo" mark, there were seven prior federal registrations incorporating the term. Defendants' evidence also shows that twenty-two of the third party marks were or are used in connection with restaurant or nightclub services and 12 were or are used in connection with clothing products. Three of the restaurants, "Bongo Burger" in California, "Bongo Java" in Tennessee, and "Bongo's Beach Bar & Grill" in Florida, sell souvenir merchandise, including T-shirts. After examination of all the evidence, the Court concludes that Plaintiff's use of a common English term combined with the extensive third party use of the term renders it unlikely that Plaintiff's mark will be found to have strong trademark significance.

### 2. Similarity of the Parties' Marks

In determining whether the parties' marks are similar, the Court must compare the marks' appearances, sounds, and meanings, as well as the manner in which the marks are used. *Amstar*, 615 F.2d at 260. The marks are examined in their entirety, rather than simply by comparison of the similar terms or dominant features. *See Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir.1987); *In re National Data Corp.*, 753 F.2d 1056, 1058 (Fed.Cir.1985). "[L]ikelihood of confusion cannot be predicated on dissection of a mark, that is, on only part of a mark." *National Data Corp.*, 753 F.2d at 1058; *see also Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 1007 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion.").

The mere fact that both marks incorporate a form of the common word "bongo" does not render the marks similar. *See, e.g., Freedom Sav. & Loan Ass'n*, 757 F.2d at 1183 ("Freedom Savings and Loan" and "Freedom Real-

ty" marks "lack ... confusing similarity"); *Sun Banks*, 651 F.2d at 316 ("Sun Federal and Savings Loan Association" not confusingly similar to "Sun Banks"); *Amstar*, 615 F.2d at 260 ("Domino's Pizza" not similar to "Domino sugar"); *Bell Laboratories, Inc. v. Colonial Prods., Inc.*, 644 F.Supp. 542, 547 (S.D.Fla.1986) ("Final flip" and "Flip" marks for same product are "ultimately different and different sounding"); *In re Hearst Corp.*, 982 F.2d 493, 494 (Fed.Cir.1992) ("Varga girl" and "Vargas" are "sufficiently different in sound, appearance, connotation, and commercial impression, to negate likelihood of confusion"); *Mr. Hero Sandwich Sys., Inc. v. Roman Meal Co.*, 781 F.2d 884, 888 (Fed.Cir. 1986) ("Romanburger" and "Roman" marks for food products "are not similar in appearance"); *Little Caesar Enterprises*, 834 F.2d 568, 571 ("Pizza Caesar U.S.A." not similar to "Little Caesar's"); *Conde Nast Pubs., Inc. v. Miss. Quality, Inc.*, 507 F.2d 1404, 1407 (CCPA 1975) ("Country Vogues" and "Vogue" publications "do not look or sound alike"); *Pacquin–Lester Co. v. Charmaceuticals, Inc.*, 484 F.2d 1384 (CCPA 1973) ("Silk 'n' Satin" beauty and bath lotion and oil not similar to "Silk" face cream).

"Bongo" and "Bongos Cuban Cafe" have distinct appearances and sounds. Plaintiff's "bongo" mark is displayed on clothing in advertising accompanied by slogans conveying the impression that the clothing is classically American or quality American-made. Defendants' mark, by contrast, is displayed with pictures that convey a uniquely Cuban impression. The decor of Defendants' establishment, the food served, and much of the souvenir merchandise are uniquely Cuban. Moreover, while Plaintiff's use of "bongo" is simply, as Plaintiff states, "a catchy name under which to market the jeans" with no independent association, (Pl.'s Mem. at 6), Defendants' use of "Bongos" conjures up images of the musical instrument and the Cuban music associated with it. Moreover, Defendants' incorporation of the terms "Cuban Cafe" explicitly indicate to the viewer that the associated business is a Cuban restaurant rather than an all-American clothing company. The parties' marks clearly convey different commercial impressions. *See Amstar*, 615 F.2d at 260 ("Domino's Pizza" created

uniquely Italian impression substantially different from impression created by "Domino" standing alone).

### 3. Similarity of Goods and Services

There can be no doubt that a Cuban cafe provides materially different goods and services from a retail clothing company. Plaintiff points out, however, that overlap occurs because Defendants' gift shop sells souvenir clothing items. The mere fact that Defendants sell some clothing items and Plaintiff specializes in retail apparel does not establish proximity of the goods for the purposes of likelihood of confusion. *See W.W.W. Pharm. Co., Inc. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993) (fact that products are both personal care products "does not make them proximate"); *McGraw–Edison Co. v. Walt Disney Prod.*, 225 U.S.P.Q. 512, 515, 1984 WL 1394 (N.D.Ill.1985) (fact that both products involve electronics does not establish similarity).

In order to establish similarity, consumers must be likely to think that Defendants' goods come from the same source as Plaintiff's goods or are sponsored or approved by Plaintiff. *See E. Remy Martin & Co. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir.1985). Defendants assert that because their clothing items are only marketed in the gift shop immediately adjoining the restaurant, there is no way a customer would mistake their clothing items for Plaintiff's clothing items. Plaintiff counters that there is a likelihood that post consumers, i.e. people later viewing Defendants' merchandise, will be likely to confuse the merchandise for Plaintiff's merchandise. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817 (9th Cir.1980).

The Court finds, however, that it is unlikely that the products will be confused at the post consumer stage. The words "Cuban Cafe" clearly delineate that Defendants' clothing products are souvenirs from a restaurant. As Defendants' evidence imparts, people are accustomed to clothing items that refer to services and establishments. Consumers are able to establish the difference between clothing with brand labels on them (i.e. "Guess?" jeans) and clothing sold as souvenirs from commercial establishments (i.e. "Planet Hollywood" T-shirts). The

Court agrees with defense counsel's assertion at the preliminary injunction hearing that "if we were to see a person on the street or at a mall wearing a T-shirt saying ... Lee's Hungarian Cafe, we would understand that the T-shirt is promoting a restaurant. We would not be at all likely to assume that the T-shirt was made by the company that makes Lee Jeans."

Moreover, Defendants' clothing merchandise only comprises 6.8% of Defendants' business. Thus, the vast majority of Defendants' business is extremely dissimilar from Plaintiff's business. Finally, Plaintiff concedes that it does not have evidence that Defendants' products have been confused for its products. Thus, because Plaintiff has not shown that it is likely that the consumer public will mistake Defendants' products for Plaintiff's merchandise, Plaintiff has not shown that the goods and services are similar.

### 4. Similarity of Retail Outlets and Customers

Plaintiff is unlikely to prove that the parties' retail outlets and customers are similar. Defendants only sell their clothing merchandise in a shop adjoining their one restaurant in Downtown Disney, Orlando. Plaintiff sells its products in shopping centers and smaller retail clothing stores all over the country. Plaintiff's customers are primarily females who wear junior apparel, while Defendants' customers are primarily tourists visiting the Walt Disney World Resort. Although Defendants' clientele may include members of Plaintiff's clientele and vice versa, the two customer classes are not one and the same.

### 5. Similarity of Advertising Media

Plaintiff contends that the advertising media employed by the parties are "substantially similar," while Defendants contend that they are "entirely distinct." Plaintiff's principal advertisements are glossy color print advertisements in fashion and teen magazines such as *Seventeen, Glamour, Teen, Elle,* and *Cosmopolitan,* as well as some television advertisements on MTV. Plaintiff points out that its Latin American distributors also advertise in Spanish-lan-

guage magazines. Defendants, on the other hand, advertise their restaurant/bar through radio advertisements, print advertisements in newspapers such as *The Orlando Sentinel, The Tampa Tribune,* and *The Miami Herald,* and travel and locality-related magazines such as *Travel Host* and *South Florida Magazine.* Defendants also advertise on Spanish-language radio and in Spanish-language newspapers. The fact that some of Plaintiff's Latin American distributors and Florida distributors might advertise in some of the same magazines and newspapers as Defendants may prevent the parties' advertising media from being "entirely distinct." The Court, however, finds absolutely no evidence that the parties' advertising media are "substantially similar." Rather, it is clear that the parties' advertising media are substantially different, although there is the slight potential for overlap in certain areas. Moreover, none of Defendants' advertising refers to the merchandise sold in Defendants' gift shop. All advertising refers exclusively to the restaurant/bar.

### 6. Actual Confusion

Plaintiff has presented no competent evidence [3] that actual confusion of the parties' products has occurred. In fact, Plaintiff admits that it is "presently unaware of any instances of actual confusion." (Pl.'s. Mem. at 9). Although, as Plaintiff points out, "[t]he law is well settled in this circuit that evidence of actual confusion between trademarks is not necessary to a finding of likelihood of confusion," *E. Remy Martin,* 756 F.2d at 1529, actual confusion is "the best such evidence" of likelihood of confusion, *id.* In this case, actual confusion is simply lacking.[4]

### 7. Defendants' Intent

■■■■ Plaintiff has not presented evidence that Defendants acted in bad faith by naming their restaurant "Bongos Cuban Cafe." To determine whether a defendant has acted in bad faith, a court must examine "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *The Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 964 (2d Cir.1996) (quoting *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576, 583 (2d Cir.1991)). Defendants present evidence that the origin of the name is completely unrelated to Plaintiff's company. Testimony indicates that Defendants chose the to incorporate the term "Bongos" because it referred to the drums popular in Cuban music and was the name of one of the owner's deceased pets. Plaintiff contends that Defendants acted in bad faith because they knew about Plaintiff's trademarks. However, "prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 397 (2d Cir.1995). In addition, Defendants present evidence that they consulted legal counsel, researched all potential names to see if there were prior users, and chose a name that they believed did not infringe upon anyone's mark, including Plaintiff's. "Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel." *W.W.W. Pharmaceutical Co., Inc.,* 984 F.2d at 575. The Court finds no evidence that Defendants acted in bad faith.

Consequently, after careful examination of the seven factors in the likelihood of confusion test, the Court concludes that Plaintiff has not made an adequate showing that there is a likelihood that consumers will confuse its products with Defendants' products. As a

---

3. Plaintiff presents a memorandum that indicates that a caller mistook. Plaintiff's offices for Defendants' restaurant. This memorandum is inadmissible hearsay and thus of no evidentiary value. *See Ocean Bio–Chem, Inc. v. Turner Network Television, Inc.,* 741 F.Supp. 1546, 1559 n. 7 (S.D.Fla.1990) (finding affidavit of employee testifying to misdirected phone call constitutes double hearsay and is inadmissible as evidence of actual confusion).

4. Defendants offers a survey to show that no actual confusion has occurred. Plaintiff contends that the introduction of the survey violates the parties' agreement to abstain from investigating actual confusion. The Court need not resolve this dispute, however, because it did not rely on the survey in concluding that actual confusion is lacking. Rather, the Court reached its conclusion based on the lack of any competent evidence of actual confusion.

result, Plaintiff does not have a substantial likelihood of succeeding on its trademark infringement or unfair competition claims.

## B. Trademark Dilution

The trademark dilution remedy allows an owner of a uniquely famous trademark to prevent subsequent use of the mark even where there is no likelihood of confusion, as in cases involving completely different products. See J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:68, at 24–112 (4th ed.1997). Congress has provided examples of marks constituting trade dilution: "Dupont shoes," "Buick aspirin," "Kodak pianos." H.R .Rep. No. 374 (1995), 1995 U.S.C.C.A.N. 1029, 1031. To warrant protection from dilution, a trademark must be especially famous and distinctive. See McCarthy, *supra* § 24:92, at 24–144. The Federal Dilution Act provides:

In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—

(A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark was registered. . . .

15 U.S.C. § 1125(c)(1).

While the Court recognizes that Plaintiff has registered his mark and that Plaintiff extensively advertises his mark in certain markets, namely the junior women's apparel market, the Court finds that Plaintiff's mark is not so inherently distinctive and famous as to rise to the level of "Buick" or "Dupont." To be inherently distinctive, a mark must "clearly be more than just distinctive in a trademark sense," *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 968 F.Supp. 568, 578 (D.Colo.1997), and must rise to the level of "Buick" or "Kodak," see McCarthy, *supra* § 24:92 at 24–144. Even if a mark is distinctive in its particular market, it does not render it inherently distinctive so as to engender immediate recognition in the general public of a particular product. *See King of the Mountain*, 968 F.Supp. at 578 (fact that mark was distinctive in narrow market did not render mark famous because "persons outside plaintiff's niche market would not associate the phrase 'King of the Mountain' with Plaintiff"); *Golden Bear Intern., Inc. v. Bear U.S.A., Inc.*, 969 F.Supp. 742, 749 (N.D.Ga.1996) (although "Golden Bear" mark is distinctive in particular market, it "certainly does not rise to the level of marks such as Exxon, Kodak, and Coca–Cola which have been found to be generally famous"). Thus, while "Bongo" may be a distinctive mark in the junior women's apparel market, it is not a generally famous mark like "Exxon" and "Kodak."

Moreover, the duration of Plaintiff's use of the mark contradicts the contention that the mark is uniquely famous. Plaintiff has used the mark "Bongo" for fifteen years, which has been generally held an insufficient amount of time for a mark to become famous. *See, e.g., Star Markets, Ltd. v. Texaco, Inc.*, 950 F.Supp. 1030, 1034 (D.Haw.1996) (mark used for forty-six years not famous); *Genovese Drug Stores, Inc. v. TGC Stores, Inc.*, 939 F.Supp. 340, 349 (D.N.J.1996) (mark used for nine years not famous). Finally, extensive third party use of the word "bongo" undermines the inherent distinctiveness of Plaintiff's mark. *See Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F.Supp. 733, 750 (S.D.N.Y.1997) (any claim of distinctiveness for dilution purposes is "seriously undermined by third party use of the same or similar marks"); *Sports Authority, Inc. v. Abercrombie & Fitch, Inc.*, 965 F.Supp. 925, 941 (E.D.Mich.1997) ("Sports Authority" mark held not famous because of extensive third party use of term "authority").

In addition, even if the Court were to assume, *arguendo*, that Plaintiff's mark is famous, Plaintiff does not have evidence that dilution is likely to occur. Courts employ a six factor test to determine likelihood of dilu-

tion: (1) similarity of the marks; (2) similarity of the products; (3) sophistication of customers; · (4) predatory intent; (5) renown of senior mark, and (6) renown of junior mark. *See, e.g., Ringling Brothers–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F.Supp. 204, 211 (S.D.N.Y.1996). For dilution to occur, the marks "must be 'very' or 'substantially' similar and ... absent such similarity, there can be no viable claim of dilution." *Id.* at 211–12. The Court already has addressed the majority of these factors under the likelihood of confusion test and has determined, *inter alia*, that Plaintiff has not shown that the marks are substantially similar, that the products are substantially similar, that customers will likely confuse the products, or that Defendants acted in bad faith. Consequently, Because Plaintiff's mark is not famous and dilution is not likely to occur, Plaintiff is not substantially likely to succeed on the merits of its federal trade dilution claim.

The Florida Dilution Act permits a court to enjoin the user of the "same or similar mark ... if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark." Fla.Stat. § 495.151. In addition to the statutory requirement that the marks be similar, Florida courts require the prior user's mark to be distinctive. *See, e.g., Great Southern Bank v. First Southern Bank*, 625 So.2d 463, 470–71 (Fla.1993) (mark must be "highly distinctive"). In *Glen Raven Mills, Inc. v. Ramada Int'l, Inc.*, 852 F.Supp. 1544, 1554 (M.D.Fla.1994), the Court, interpreting the Florida Dilution Act, observed:

A trademark is sufficiently distinctive to be diluted by a nonconfusing use if the mark retains its source significance when encountered outside the context of the goods or services with which it is used by the trademark owner. For example, the trademark KODAK evokes an association with the cameras sold under that mark whether the word is displayed with the cameras or used in the abstract.

Because the Florida Dilution Act, like the Federal Dilution Act, requires distinctiveness and similarity, Plaintiff's claim under the Florida Dilution Act must also fail for reasons set forth above.

Plaintiff's failure to show a substantial likelihood of success on the merits of his substantive causes of action is alone sufficient ground for the denial of the preliminary injunction.[5] *See Swatch Watch, S.A. v. Taxor, Inc.*, 785 F.2d 956, 959 (11th Cir.1986). Nonetheless, the Court will briefly address the remaining elements necessary for injunctive relief.

## II. IRREPARABLE HARM TO PLAINTIFF IN ABSENCE OF INJUNCTION

■ Plaintiff contends that it will suffer irreparable harm if the Court does not enjoin Defendants' use of the name "Bongos Cuban Cafe." Plaintiff argues that irreparable harm is presumed when there is a strong showing of likelihood of confusion, while Defendants assert that courts do not presume irreparable harm. Indeed, there is a split among courts in this Circuit as to whether irreparable harm is presumed from a finding of likelihood of confusion. *Compare E. Remy Martin & Co. v. Shaw–Ross Int'l Imports, Inc.,*

5. On January 20, 1998, after the preliminary injunction hearing, Plaintiff filed a Supplemental Memorandum setting forth an additional cause of action for "reverse confusion." "Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user.... [T]he senior user is injured because the public comes to assume that the senior user's products are really the junior user's or that the former has become somehow connected to the latter." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir.1992).

The substance of Plaintiff's reverse confusion claim consists of the allegation that a Ft. Lauderdale radio station, Y–100, urged its listeners to

ban "Bongo" jeans to prove the point that customers could distinguish "lunch from jeans." (Pl.'s Supp.Mem. at 2). Plaintiff's evidence of this allegation consists solely of hearsay statements.

Even if this claim were properly before the Court and supported by admissible evidence, it would still fail on the merits. It would be a stretch of logic and law, indeed, to hold that the public's backlash against what it perceives to be a frivolous law suit constitutes reverse confusion. If anything, it constitutes just the opposite. Y–100 listeners think that confusion, reverse or otherwise, is so unlikely that they desire to protest against Plaintiff's law suit.

756 F.2d 1525, 1530 (11th Cir.1985) ("a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm"); *with Solar Cosmetics Labs, Inc. v. Sun–Fun Prods., Inc.*, 941 F.Supp. 1185, 1189 (M.D.Fla.1996) ("it is clear that irreparable harm does not automatically follow from a substantial showing of likelihood of confusion"). The Court need not resolve this conflict of opinions, however, because Plaintiff has not shown likelihood of confusion.

Moreover, Defendants have presented evidence of extensive third party use, which has not caused irreparable damage to Plaintiff. This seriously undermines Plaintiff's contention that irreparable harm will occur if Defendants' use continues. Finally, Plaintiff has not demonstrated how confusion between its products and Defendants' products would harm Plaintiff's reputation. *Id.* at 1188 ("potential injury to one's reputation is the gravamen of trademark infringement"). Because Plaintiff has not shown that consumer confusion is likely or that Defendants' use of the term "Bongos" will actually cause irreparable harm to Plaintiff's reputation, the Court finds that Plaintiff has not shown that irreparable injury would occur in the absence of an injunction.

### III. POTENTIAL HARM TO DEFENDANTS

█ Plaintiff has asked for the broad relief that this Court enjoin Defendants from using the name "Bongos Cuban Cafe" in any manner. Evidence presented to the Court reveals that the name "Bongos Cuban Cafe" is incorporated into virtually every aspect of Defendants' restaurant. Enjoining the use of "Bongos Cuban Cafe" would not only make Defendants' merchandise worthless, but it would also require Defendants to reconstruct a restaurant that took 2 years and $5 million to build. Plaintiff asserts that any harm to Defendants is justified by "Defendants' tortious and malicious conduct." (Pl.'s Mem. at 15). Even assuming that tortious and malicious conduct by a defendant relieves the Court of the need to analyze harm to the defendant, the Court has found Defendants' conduct to be neither tortious nor malicious. As a result, the great harm posed to Defendants by such an injunction is not justified.

### IV. PUBLIC INTEREST

█ Plaintiff contends that the public interest is served when a Court prevents consumers from being confused by deceptive products. Again, the Court has already found that Plaintiff has not shown that a likelihood of consumer confusion exists. The Court recognizes the public's ability to distinguish the "Bongos Cuban Cafe" theme restaurant and related souvenir products from "Bongo" retail juniors apparel. Consequently, the public interest will not be served by preventing public consumption of "Bongos Cuban Cafe" food and goods.

### *Conclusion*

Plaintiff has not established the requisite elements for a preliminary injunction. Because the Court finds that immediate equitable relief is not warranted, it declines to grant Plaintiff the "extraordinary remedy" of a preliminary injunction. *See Tefel v. Reno*, 972 F.Supp. 623, 633 (S.D.Fla.1997).

Accordingly, after careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the Plaintiff's Motion for Preliminary Injunction be, and the same is hereby, DENIED.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 12th day of February, 1998.