**ROSS BICYCLES, INC.,**
**Plaintiff-Appellant,**

v.

**CYCLES USA, INC.,**
**Defendant-Appellee.**

No. 84-3354.

United States Court of Appeals,
Eleventh Circuit.

July 22, 1985.

Paul Watson Lambert, Tallahassee, Fla., Bruce E. Lilling, White Plains, N.Y., Burton L. Lilling, Scarsdale, N.Y., for plaintiff-appellant.

Albert Robin, Robin, Blecker & Daley, New York City, for defendant-appellee.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

GODBOLD, Chief Judge:

Ross Bicycles sued alleging trademark infringement and false designation of origin. The facts are stated in the district court's opinion, reproduced as an appendix.

The district court held that there was no trademark infringement because there was no likelihood of confusion between the trademarks at issue and that there was no trade dress infringement because there was no likelihood of confusion between the trade dress of the two products. It also denied the defendant's request for attorney's fees and Ross' motions to amend the pre-trial stipulation.

On appeal, Ross contends that the district court erred by finding no trademark infringement, failing to rule on its false designation of origin claim, failing to award it attorney's fees, and denying its motions to amend the pre-trial stipulation. We affirm the district court's holding as to trademark infringement on the basis of its opinion. We also reject Ross' other contentions.

Count two of Ross's complaint asserted a claim for false designation of origin under 15 U.S.C. § 1125(a). It appears that the district court treated this as a claim of trade dress infringement. It held that its finding that there was no likelihood of confusion between the two trademarks meant that there was no likelihood of confusion between the trade dress of the two products. Despite treating the false designation of origin claim as a claim of trade dress infringement, the district court ruled properly.

To prevail on a false designation of origin claim under 15 U.S.C. § 1125(a) a plaintiff must establish that the defendant adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir.1984). The factors relevant to establishing this are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15

**1504**

U.S.C. § 1114. *Compare id.* at 1514 (false designation of origin) *with John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 973–79 (11th Cir.1983) (trademark infringement). Accordingly, the district court's finding of no likelihood of confusion with respect to trademark infringement precluded finding a likelihood of confusion with respect to the false designation of origin claim.

■ The district court's denial of Ross' motions to amend the pre-trial stipulation was not error. The pre-trial stipulation was filed January 5, 1984. On March 7 Ross moved to amend the stipulation to add seven additional exhibits and three witnesses, all with respect to a survey it had conducted on February 3 and 26 concerning the likelihood of confusion issue. On March 26, at the opening of the trial, Ross moved to further amend the pre-trial stipulation to add Thomas Payne as a trial witness. Payne was to testify to an incident that occurred four months prior to the submission of the pre-trial stipulation.

Despite Ross' contentions that the district court indicated at the time of the pre-trial conference that discovery would remain open, that there was little time to conduct discovery, and that Payne's testimony did not come to its attention until after the pre-trial stipulation, we hold that the district court did not commit a clear abuse of discretion. *U.S. v. Koziy,* 728 F.2d 1314, 1320 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 130, 83 L.Ed.2d 70 (1984). *Cf. Typographical Service, Inc. v. Itek Corp.,* 721 F.2d 1317, 1319 (11th Cir.1983) (documentary evidence neither newly discovered nor related to any other previously admitted evidence); *Jackson v. Seaboard Coast Line Railroad Co.,* 678 F.2d 992, 1019 (11th Cir.1982) (party calling witness on notice of evidence witness would rebut).

■ Finally, because Ross has not prevailed on any issue it has not satisfied the prevailing party requirement of 15 U.S.C. § 1117 and is not entitled to attorney's fees.

AFFIRMED.

## APPENDIX

### MEMORANDUM OPINION

The complaint in this case alleges infringement of a registered trademark, 15 U.S.C. § 1114(1), and the false designation of the origin of defendant's bicycles, 15 U.S.C. § 1125(a). The complaint seeks injunctive relief against defendant's alleged infringement and false designation, an accounting of profits, damages, punitive damages, destruction of infringing materials, costs and reasonable attorneys' fees.

The action involves the production and sale of "cruiser" bicycles by plaintiff and defendant. The word "cruiser" is used throughout the industry to describe fat or balloon tire bicycles (larger than ten-speed bicycle tires) with large saddle seats and upright handlebars which permit the rider to ride sitting straight up. Cruisers generally come in single, three or five speeds. The cruiser bicycles became popular in the late 1970's and defendant developed its cruiser lines to tap into this market. In Florida, where defendant does most of its business, the cruiser can be used to ride on the beaches.

### FINDINGS OF FACT

Plaintiff Ross Bicycles, Inc. (Ross) was incorporated in New York in 1946 under the name "Chain Bike Corporation". The name was changed to "Ross Bicycles, Inc." on May 21, 1982. Since 1946 Ross has manufactured and sold over ten million bicycles bearing the Ross trademark throughout the United States. Ross sells a complete line of bicycles including children's, BMX, touring, cruiser, mountain, racing and stationary exercise bicycles.

Plaintiff is the owner of the Ross trademark for bicycles and structural parts which has been registered with the United States Patent and Trademark Office. The Ross mark generally appears in two places. A logo consisting of the letter "R" above the name Ross in a rectangle appears on the head tube (the tube running vertically between the handle bar and the front wheel). The name Ross, in one of several

different letter styles and spacing, appears on the down tube (the tube running from the head tube to the crank). On some of plaintiff's bicycles a model name, without the name Ross, appears on the top tube (the tube running from the head tube to the seat tube).

Plaintiff advertises its bicycles in bicycling magazines and promotes their sales with catalogs, brochures and point-of-sale materials and by participation in trade shows and the sponsorship of racing teams. The total direct and indirect advertising budget for all Ross bicycles is over one million dollars a year.

Defendant East Coast Cycles and Imports, Inc., was incorporated in Florida in August of 1975. Defendant's principal, Ronald E. Jamis, entered the bicycle business in 1973. Defendant is engaged in the business of having bicycles manufactured for it for sale, and distributing various types of bicycle parts and accessories.

In 1979 defendant entered the cruiser bicycle market with its "Earth Cruiser" model, a bicycle manufactured in Taiwan and sold by retailers principally in Florida and neighboring states. In 1980 defendant added the "Taxi" model cruiser to its line, and in late 1982 defendant added the "Boss Cruiser" model to its line.

The Boss Cruiser was developed because of a perception by defendant that a large bicycle was needed to complete its line of cruisers. The Boss Cruiser was designed for above average height people to insure pedal knee clearance with the handlebars. Defendant wanted to provide a bike which gave a "macho" or "strength" image. To accomplish this, the first frame developed was 23″ (measured from the center of the sprocket to the top of the seat tube), and used oversized tubing (30% larger in diameter than the tubing used by Ross cruisers).

Ronald Jamis and John Register, an employee of defendant, designed the specifications of the Boss Cruiser. Mr. Jamis had some experience racing and building cars and motorcycles during highschool and college. Mr. Register had no experience in designing bicycles. The Boss Cruiser was designed over a one year period. In designing the Boss Mr. Jamis and Mr. Register rode various cruiser bicycles to compare and decide what features they wanted including the Ross Diamond Cruiser. After determining the approximate frame dimensions they desired, the defendant communicated the measurements to a Taiwan factory. Five or six prototype frames were sent to defendant by the factory before defendant chose the final dimensions for the Boss. Defendant has sold over 7,000 Boss Cruisers.

At the time defendant adopted the name Boss Cruiser for its new bicycle it was aware of the use and ownership by plaintiff of the Ross mark in connection with bicycles. The name "Boss Cruiser" was developed by Mr. Jamis and his employees over a three to four month period. The name was chosen to give the bicycle a macho or strength image. Defendant obtained two trademark searches as to the availability of the name Boss Cruiser, and neither search cited plaintiff's mark. Although Mr. Jamis knew of the Ross mark, he did not copy it in naming the Boss Cruiser, nor did defendant adopt the Boss mark to confuse the public or to capitalize on the Ross name.

The name "Boss Cruiser" appears on the front fork, on the top tube, and on the chain guard. There is no name or logo on the down tube. On the seat tube (the tube running vertically between the seat and the crank) a logo appears which consists of a "boss" figure and the words "The Boss". Since August 1983 the East Coast Cycle Import/Jamis logo appears on a "badge" on the head tube. During the first three months of production of the Boss Cruiser the badge only contained the word "Cycle". The last shipment of cycle badges occurred in February or March 1983.

Other than the badge placement on the head tube the logos and letter styling used on the Boss Cruiser and most Ross products are not similar in style or location.

Defendant has promoted the Boss Cruiser through trade shows, by use of posters and other point-of-sales materials, and through advertising in bicycling magazines.

Plaintiff's and defendant's bicycles are distributed through the same types of stores.

The Ross Diamond Cruiser is the plaintiff's model which is closest in design and price range to the Boss Cruiser. When comparing the 23″ Ross Diamond Cruiser to the 23″ Boss Cruiser (the size first developed by defendant) the following differences are shown:

1) Boss has aluminum alloy wheels and Diamond has less expensive steel wheels;

2) Boss has a front brake which is about 25–30% more expensive than the brake used on the Diamond;

3) Boss has an aluminum alloy kickstand which costs about twice as much as the Diamond's steel kickstand;

4) Boss has chrome front forks which are larger than the Diamond's painted steel front forks;

5) Boss has aluminum alloy pedals which are more durable and twice as expensive as the Diamond pedals;

6) Boss has a one piece seat which is more durable and expensive than the covered seat used on the Diamond;

7) The tubes on the Boss are 30% larger in diameter than the tubes used on the Diamond frame; and

8) The angles on the Boss frame are different than the angles used on the Diamond frame.

The comparison of the Boss Cruiser and the Ross Diamond Cruiser frames shows conclusively that defendant did not copy the Ross bicycle when developing the Boss Cruiser. Moreover, the Boss Cruiser generally sells at a higher wholesale and retail price than the Ross Diamond Cruiser.

The plaintiff and defendant had a number of Florida bicycle store retailers as witnesses. Those witnesses showed that the "average" consumer buys a bicycle by visiting bicycle stores and asking for a style of bike (e.g. Cruiser) in a certain price range. Most consumers do not ask for a particular brand of bike when buying cruisers.

Several stores sell both the Boss and Diamond Cruiser. The two bicycles are the biggest competitor of each other. Because of the different angles in the two bicycle frames they ride different and the oversized Boss Cruiser tubes make the style of the bicycles look different. A number of the dealers said that the Boss Cruiser sold better than the Ross Diamond Cruiser because of the "flamboyant macho image". The market for the Boss Cruiser is generally for young males ages 18–25. Many dealers preferred the Boss Cruiser because of the aluminum alloy and chrome parts which reduce the amount of rust.

## TRADEMARK INFRINGEMENT

Title 15 U.S.C. § 1114(1) governs lawsuits for the infringement of a registered mark. That section provides that a defendant shall be liable for the use of an imitation of a registered mark if the use "is likely to cause confusion, or to cause mistake, or to deceive". Thus the critical question under this section is whether there is a likelihood of confusion, mistake, or deception between the registered mark and the allegedly infringing mark. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir.1983). Among the factors considered when analyzing the likelihood of confusion between two marks are: 1) the type of trademark; 2) the similarity of design; 3) the similarity of the product; 4) the identity of the retail outlets and purchasers; 5) the similarity of advertising media used; 6) the defendant's intent; and 7) actual confusion. *Id.* at 972.

### A. *Type of trademark.*

Plaintiff's mark Ross, while arbitrary, is the surname of a large number of people. *See, Amstar Corp. v. [Domino's] Comino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir.1980); *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Arbitrariness refers to the quality of a mark, i.e., that it bears no relation to the service provided. *Sun Banks of Fla. v. Sun Federal Savings & Loan*, 651 F.2d 311, 315 (5th Cir.1981). The ultimate strength of a mark is determined by a number of factors

which establish its standing in the market-place.

In addition to being a common surname, Ross is also the name of the sea arm of the South Pacific extending into Antarctica East of Victoria Land. The Ross Dependency is the section of Antarctica lying between 160°E and 150°W longtitude, claimed by New Zealand. While the Ross name's application to bicycles may be arbitrary, it still is not accorded the same degree of protection given such coined and fanciful terms as "Kodak" or "Xerox". *See, Amstar Corp.*, 615 F.2d at 260.

### B. *Similarity of Design.*

The similarity of design is determined by considering the overall impression created by the mark[s] as a whole rather than simply comparing individual features of the marks. *John H. Harland Co.*, 711 F.2d at 975. This consideration includes a comparison of the appearance, sound and meaning of the marks, as well as the manner in which the marks are used. *Id.*

There are some obvious similarities between the appearance and sound of the mark Ross and the mark Boss. Both marks end in "oss". Defendant's mark is followed by the word "cruiser", which is generic in the context of bicycles. Although the marks ultimately must be considered as a whole, the focus of the inquiry regarding appearance and sound and meaning is on the non-generic portion. *John H. Harland Co.*, 711 F.2d at 976. With respect to the meaning, Ross is a common surname, while Boss conveys a definite meaning to the public. The word Boss commonly means one who exercises control or authority; being in charge; or is slang for excellent.

Although there are similarities in sound between the marks, the difference in meanings makes them dissimilar in commercial impression. The mark Boss gives a specific mental impression to a buyer, while the mark Ross is non-descriptive. The Jamis mark appears on the head tube of the defendant's bicycle, and "Boss cruiser" appears on the front fork, top tube and chain guard. Plaintiff uses Ross as the brand for all of its bicycles. Ross appears on the head tube in the same position as defendant's Jamis mark and on the down tube. Many Ross bicycles carry a secondary model name, such as Diamond Cruiser, in the same manner as the Boss Cruiser model name.

The black lettering used to display the word "Boss" is not identical to the block lettering used by plaintiff for its Ross mark. The Ross mark is displayed in various changing typestyles making it impossible to make one type of lettering unique to Ross.

### C. *Similarity of products.*

The greater the similarity between the products and services the greater the likelihood of confusion. *John H. Harland*, 711 F.2d at 976.

The products in this case, although similar (both being bicycles), are not so similar as to be likely to cause confusion. As stated earlier, the size of the tubing, the style of wheels, pedals, seats, kickstands, and the difference in the frame angles on the Boss Cruiser and the Ross Diamond Cruiser are significant. The bicycles not only look different, the evidence showed that they had different riding characteristics.

While the inherent degree of similarity between two bicycles is one factor to be evaluated in assessing the likelihood of confusion, *Sun Banks of Fla.*, 651 F.2d at 318, obvious differences in the products must also be taken into account.

### D. *Identity of Retail Outlets and Purchasers.*

Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake or deception. *Amstar Corp.*, 615 F.2d at 262. The plaintiff and the defendant sell their products through the same type of retail outlets and in some cases in the same stores. Although the customers for the products in many cases are identical, the Boss Cruiser is generally marketed to above average

height males between the ages of 18–25.. The Ross Diamond Cruiser is not limited to such a market.

### E. *Similarity of Advertising Media Used.*

The greater the similarity in advertising campaigns the greater the likelihood of confusion. *Exxon Corp. v. Texas [Motor] Meter Exchange, Inc.*, 628 F.2d 500, 506 (5th Cir.1980). In this case plaintiff and defendant use similar methods of advertising their products, relying primarily on magazine advertising.

### F. *Defendant's Intent.*

The defendant's intent in adopting a mark is relevant in assessing the likelihood of confusion. *Amstar Corp.*, 615 F.2d at 263. That a latecomer adopts another's name, deliberately seeking to capitalize on the other's reputation and benefit from the confusion, is an important factor for a court. *Sun Banks v. Sun Federal Savings & Loan Ass'n*, 651 F.2d at 318.

There is evidence showing that the defendant, when designing the Boss Cruiser, rode the Ross Diamond Cruiser along with approximately ten other cruisers. However, the evidence presented showed that the defendant did not use the Diamond Cruiser as a model when designing the Boss Cruiser. Almost every component part of the Boss Cruiser was different than the corresponding part used on the Diamond Cruiser. The difference in the component parts, as well as the oversized tubing and the different angles rebut any inference that defendant was attempting to benefit from the Ross style. There was no evidence that defendant has even attempted to "pass off" its product as that of the plaintiff. As already stated the evidence showed that defendant adopted Boss to give an appearance of strength which, from the evidence at trial, was accomplished.

Additionally it was uncontroverted that the defendant had two tradename searches run on the name "Boss Cruiser". Although the fact that defendant sought trademark counsel does not preclude a finding that defendant intended to trade on plaintiff's good will, this Court finds that it is evidence of defendant's good faith in adopting the Boss Cruiser mark. *See, John H. Harland Co.*, 711 F.2d at 977–78.

### G. *Actual Confusion.*

Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion. *Amstar Corp.*, 615 F.2d at 263.

The plaintiff presented no clear evidence of instances of actual confusion at trial. The only evidence plaintiff presented at trial about actual confusion was from three retail Ross distributors. These Ross distributors testified that an undetermined number of potential customers came into their Ross dealerships and asked for the Boss Cruiser. Defendant presented evidence by retail dealers, several who sold both the Boss Cruiser and the Ross Diamond Cruiser. These dealers gave evidence of how customers purchase bicycles. As stated earlier, the majority of consumers purchase bicycles by requesting a style in a price range. Then the retail dealer would show the consumer the various brands of bicycle in that style carried by that store. No customers or potential customers testified as to confusion. All the dealers who testified, plaintiff's and defendant's, stated unequivocally that they had no confusion as to the difference between the Boss Cruiser and the Ross line and used these differences in selling the bicycles to consumers. In fact, the dealers, although disagreeing as to which bicycle was superior, all were able to point out significant and obvious differences between the bicycles.

### H. *Summary.*

Having analyzed the key factors individually, the Court must now weigh the factors to determine whether there is sufficient evidence to find that there is a likelihood of confusion between the marks. Although the Ross mark may be considered strong, the two marks are far from identical in appearance and meaning. The prod-

ucts and the retail outlets are similar but many of the potential purchasers are different. This Court finds that defendant did not adopt the Boss name in order to benefit from the plaintiff's reputation, and the evidence of actual confusion was slight at best. In fact, every witness who testified could easily point to differences which this Court could view with an inexperienced eye. Accordingly, this Court finds, after weighing the above factors, there is not a likelihood of confusion between the marks.

## TRADE DRESS INFRINGEMENT

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, states in relevant part:

Any person who shall ... use in connection with any goods or services, or any containers for goods ... any false description or representation, including words or other symbols tending falsely to describe or represent the same ... shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

"Trade dress" involves the total image of a product. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir.1982). In order to prevail on a claim for trade dress infringement the plaintiff must prove: 1) that the trade dress of the two products is confusingly similar; 2) that the features of the trade dress are primarily non-functional; and 3) that the trade dress has acquired secondary meaning. *John H. Harland Co.*, 711 F.2d at 980.

This Court need not discuss the first element of trade dress infringement, likelihood of confusion, in detail. The factors relevant to determining whether there is a likelihood of confusion between the trade dress of the two products are essentially the same as those relevant to determining whether there is a likelihood of confusion between the parties' trademarks. *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186, 192 (5th Cir. Unit B 1981). The Court has already concluded that there was not a likelihood of confusion between the parties' marks. Although the scope of the inquiry is somewhat broader under § 43(a), *see, Sun-Fun Products, Inc.*, 656 F.2d at 192, this Court still concludes that those factors do not support a finding of a likelihood of confusion between the trade dress of the plaintiffs' and defendants' products.

Since plaintiff has failed to prove the first element of trade dress infringement, and since all elements must be proved to prevail on such a cause of action, the Court need not discuss the remaining elements. *See, Amstar Corp.*, 615 F.2d at 265. Accordingly, the Court finds that there is no trade dress infringement between the plaintiff's and defendant's marks.

## ATTORNEY'S FEES

Title 15 U.S.C. § 1117 allows a district court to award attorney's fees to the prevailing party "in exceptional cases". Exceptional cases are those that involve acts which the courts have characterized as malicious, fraudulent, deliberate, and willful. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 846 (11th Cir.1983). The instant cause is not an exceptional case and therefore defendant's request for attorney's fees is DENIED.

Accordingly, it is ORDERED that the plaintiff take nothing by this suit and the action be and the same is hereby DISMISSED on the merits. East Coast Cycles and Imports, Inc., is entitled to recover its costs from plaintiff. The Clerk is directed to enter a final judgment in accordance with this order.

DONE AND ORDERED this 30th day of April, 1984.

/S/ MAURICE M. PAUL
United States District Judge