**CARNIVAL CORPORATION, Plaintiff,**

v.

**SEAESCAPE CASINO CRUISES, INC. Defendant.**

**No. 99–1724–CIV.**

United States District Court, S.D. Florida.

Oct. 26, 1999.

1262

Harley S. Tropin, Kenneth R. Hartmann, Kozyak, Tropin & Throckmorton, P.A., Miami, FL, for plaintiff.

John C. Malloy, III, Andrew W. Ransom, Malloy & Malloy, Miami, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MORENO, District Judge.

The Plaintiff, Carnival Corporation ("Carnival"), is suing the Defendant, SeaEscape Casino Cruises, Inc. ("SeaEscape"), for federal trademark infringement and dilution, as well as various state law claims. Carnival argues that SeaEscape's slogan, "SeaEscape to a Ship Full of Fun!" infringes and dilutes Carnival's "Fun Ship" mark. Because the Court finds that the SeaEscape slogan is not likely to cause confusion among consumers as to the source of the service or affiliation between the companies, Carnival's infringement claim fails. Carnival's trademark dilution claim likewise fails because the Court finds that the "Fun Ship" mark is not sufficiently famous to warrant protection from dilution.

### PROCEDURAL HISTORY

The Complaint, filed on June 18, 1999, seeks damages, as well as injunctive relief, for trademark infringement, trademark dilution, and false designation of origin and false description of goods under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a),(c). Carnival also states claims under Florida common law for unfair competition and trademark infringement, as well as for trademark dilution under Florida Statute section 495.151.

The parties agreed on an expedited discovery schedule and to proceed in a nonjury trial on liability as to all claims. The trial was conducted on August 27, 30, and

September 1, 1999. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court makes findings of fact and separate conclusions of law as more fully detailed in this Order.

## FINDINGS OF FACT

### I. The Parties

Carnival has a fleet of fourteen ships in Miami, Florida, and elsewhere, which cruise for up to fourteen days to foreign ports. Carnival services up to 1.8 million passengers per year on these vacation cruises. For the last fifteen years, Carnival has spent approximately $1 billion promoting its registered trademarks, which include various uses of the "Fun Ship" mark attached to the well-known "Carnival" mark.

SeaEscape operates one ship from Fort Lauderdale, Florida offering six-hour casino cruises, often called "cruises to nowhere." Recently, SeaEscape expanded its entertainment program to promote nongambling activities, as well. In order to promote this expanded format, SeaEscape's advertising agent, James Lobel of GNL Group, suggested that the Defendant use the slogan "SeaEscape to a Ship Full of Fun!" The Chief Operating Officer of SeaEscape, Bruce Yasukochi, approved the $1 million advertising campaign, despite expressing concern of probable trademark litigation from Carnival. The use of this phrase by SeaEscape forms the basis of Carnival's lawsuit, claiming violation of its registered trademark "the Fun Ships."

### II. The Marks

Both "Carnival" and "SeaEscape" are federally registered trademarks. The "Fun Ship" marks, in both singular and plural forms, are separately registered marks. Carnival began using the "Fun Ship" mark in the early 1970s and first registered its mark in 1975. However, rather than use the "Fun Ship" mark alone in advertisements, Carnival uses the "Fun Ship" mark in conjunction with the "Carnival" mark 95% of the time.

On the other hand, SeaEscape's tagline "to a ship Full of Fun!" is not a registered mark, although the symbol "SM" (signifying "service mark") is clearly visible next to all of the SeaEscape advertisements submitted in evidence.[1] SeaEscape began its "SeaEscape to a Ship Full of Fun!" advertising campaign in March of 1999.

At the trial, Carnival witnesses Christine Arnholt, Vice President of Marketing Services; Ellen Levenson, Trademark Administrator; and Robert Dickinson, President, credibly testified that Carnival vigorously protects all of its trademarks, including the "Fun Ship" mark.

Mr. Yasukochi testified that he was well aware of Carnival's "Fun Ship" mark during his tenure as a private auditor of Carnival's account. Although Yasukochi testified that he did not participate in the creation of the alleged infringing slogan, he admitted that he approved the slogan. Yasukochi's experience as a private accounting auditor at Carnival prior to assuming his duties at SeaEscape led him to conclude that Carnival would vigorously prosecute any alleged infringement. This resulting litigation bears out that Yasukochi was correct in his prediction that litigation would ensue.

## CONCLUSIONS OF LAW

### I. Trademark Infringement[2]

■ To prevail on a trademark infringement claim under 15 U.S.C. § 1114, the

---

1. Service marks identify services, whereas trademarks identify goods. Courts treat the terms as interchangeable in adjudicating infringement claims. *See Frehling Enter., Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1334 n. 1 (11th Cir.1999) and cases cited therein.

2. The analysis under the Lanham Act for trademark infringement also applies to claims of trademark infringement and unfair competition under Florida common law. *See Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1475 n. 3 (11th Cir.1991); *American United Life Ins. Co. v. American United Ins. Co.*, 731 F.Supp. 480, 486 (S.D.Fla.1990).

plaintiff must show that it owns a valid trademark, that its mark has priority, that the defendant used such mark in commerce without the plaintiff's consent, and that the defendant's use is likely to cause consumer confusion as to the source, affiliation or sponsorship of its goods or services. *See Frehling Enter., Inc. v. International Select Group, Inc.,* 192 F.3d 1330, 1334 (11th Cir.1999); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1307 (11th Cir. 1998); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 122 F.3d 1379, 1382 (11th Cir.1997); *Dieter v. B & H Indus. of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir.1989), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

There is no question, and the Court finds, that both "Carnival" and "Fun Ship" are registered marks entitled to protection. It is undisputed that Carnival's "Fun Ship" mark has priority over the Defendant's "SeaEscape to a Ship Full of Fun" mark. The Court also finds that SeaEscape used the alleged infringing mark without Carnival's consent. However, the conclusion as to whether the Defendant's use of its slogan "SeaEscape to a Ship Full of Fun" would likely cause confusion with Carnival's "Fun Ship" mark is not as easily reached.

■ "Likelihood of confusion" means probable confusion rather than mere possible confusion. *See Michael Caruso & Co., Inc. v. Estefan Enter., Inc.,* 994 F.Supp. 1454, 1458 (S.D.Fla.1998) (citing *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.,* 697 F.2d 1352, 1356 n. 2 (11th Cir.1983) (discussing "substantial likelihood of success on the merits" and stating that "likelihood" is synonymous with "probability")), *aff'd,* 166 F.3d 353 (11th Cir.1998). In determining the likelihood of confusion, the court must analyze the following seven factors: (1) the type of trademark; (2) the similarity of the marks; (3) the similarity of the products the marks represent; (4) the similarity of the parties' retail outlets and purchasers; (5) the similarity of the advertising media used; (6) the defen-

dant's intent; and (7) actual confusion. *See Lone Star,* 122 F.3d at 1382; *Dieter,* 880 F.2d at 326. Of the seven factors, the Eleventh Circuit considers the type of mark and the evidence of actual confusion to be the two most important factors. *See id.*

**A. Type of Mark**

■ The type of mark is important because it dictates the level of protection that the trademark is accorded. *See John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 973 (11th Cir.1983). The four categories of trademarks, from strongest to weakest, are: 1) arbitrary or fanciful; 2) suggestive; 3) descriptive; or 4) generic. *See Dieter,* 880 F.2d at 327. The categories are based on the relationship between the name and the service or good it describes. *See Frehling,* 192 F.3d 1330, 1332.

■ The "Fun Ship" mark falls into the descriptive category, as it describes a characteristic or quality of the product or service, such as its desirable features. *See John H. Harland Co.,* 711 F.2d at 974. Generally, a descriptive mark is considered weak and is given a narrow range of protection. *See id.* However, because the "Fun Ship" marks are "incontestable," their strength is enhanced. *See Frehling,* 192 F.3d 1330, 1332. Once a mark has achieved incontestable status, the Defendant may not argue that the mark is "merely descriptive." *Dieter,* 880 F.2d at 328. Moreover, an incontestable mark is presumed to be at least descriptive with secondary meaning, and therefore a "relatively strong mark." *See id.* at 329 (holding that incontestable status affects the strength of the mark for purposes of determining whether there is a likelihood of confusion).

■ However, the Court must also take into account third-party use in assessing the strength of a mark. *See Frehling,* 192 F.3d 1330, 1332; *John H. Harland Co.,* 711 F.2d at 973–75; *Michael Caruso &*

*Co.,* 994 F.Supp. at 1459 (stating that incontestable status alone does not render a mark strong). The less that third parties use the mark, the stronger it is, and the more protection it deserves. *See Frehling,* 192 F.3d 1330, 1332. As the Eleventh Circuit explained in *Frehling,* "[w]here there is lack of third-party use, the mark's strength is enhanced, as it is distinctive, and therefore more easily recognized by consumers." *See id.*

Conversely, a mark is weakened by extensive third party use of the mark or a term used in the trademark. *See Michael Caruso & Co.,* 994 F.Supp. at 1459 (finding that defendant's evidence of extensive third-party use of the term "bongo" renders it unlikely that the mark will have strong trademark significance). In *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Ass'n,* 651 F.2d 311 (5th Cir. July 20, 1981), the court found that although the term "sun" may be arbitrary as applied to a bank, extensive third-party use of the word "sun" was "impressive evidence that there would be no likelihood of confusion between Sun Banks and Sun Federal." *Id.* at 316.

SeaEscape's evidence reveals numerous third-party registrations for marks including the term "fun" in the travel, gaming, and entertainment industries. This evidence weakens the strength of the "Fun Ship" mark. Taking into account the mark's descriptive quality, incontestable status, and third-party use, the Court concludes that the "Fun Ship" mark is not very strong and is entitled to a low level of trademark protection. Therefore, this factor weighs in favor of SeaEscape.

**B. Similarity of the Marks**

 The similarity of the marks is determined by considering the overall impression created by the marks as a whole rather than comparing individual features of the marks. *John H. Harland Co.,* 711 F.2d at 975; *Michael Caruso & Co.,* 994 F.Supp. at 1459. Some factors to consider are the appearance, sound, and meaning of the marks, as well as the way in which the marks are used. *John H. Harland Co.,* 711 F.2d at 975.

The most obvious similarity between the "Fun Ship" mark and the "SeaEscape to a Ship Full of Fun!" mark is the use of the words "fun" and "ship" in both slogans. However, as the Defendant points out, its slogan is a full sentence, beginning with a play on the word "SeaEscape." Another distinguishing feature between the two marks is that the SeaEscape slogan does not use the words "fun" and "ship" next to each other.

As for appearance, the "Fun Ships" mark is typically written in cursive and is surrounded by quotation marks. Also, the slogan is used in conjunction with the "Carnival" mark and Carnival's Reverse–C design 95% of the time. The SeaEscape slogan, on the other hand, typically appears in print letters, always begins with the word "SeaEscape" in larger font, and ends with an exclamation mark. In addition, above the word "SeaEscape" is a distinctive fantail design.

The meaning of the marks is similar in that both companies are both trying to represent their on-board services as being "fun" and an experience consumers would enjoy.

**C. Similarity of Products**

 The greater the similarity between the products and services, the greater the likelihood of confusion. *See John H. Harland Co.,* 711 F.2d at 976. The Court finds that while both companies offer entertainment on board a ship, the similarities end there. As discussed above, Carnival has a number of ships that cruise out of Miami to various ports of call, primarily in the Caribbean and Mexico. Carnival cruises are seldom shorter than three days and typically last seven days and sometimes last as long as fourteen days. Prices for the Carnival cruises are typically in the hundreds, if not thousands, of dollars per person.

The SeaEscape cruises, which cost $39 per person, last six hours, depart from and return to Fort Lauderdale, and are mainly, although not exclusively, gambling trips, are distinct from the vacation cruises offered by Carnival. Christine Arnholt, Carnival's Vice President of Marketing Services, offered further support for this position when she testified that Carnival was in a "vacation" market while SeaEscape was in a different market—the "day cruise" market. Moreover, the Court finds persuasive the Defendant's argument that its service is more of a "night on the town" rather than the vacation experience that Carnival offers.

## D. Identity of Retail Outlets and Purchasers

■ Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception. *See John H. Harland Co.*, 711 F.2d at 975.

According to Robert Dickinson, Carnival's President, 96% of Carnival's bookings are made through travel agents, and bookings are generally made at least two months in advance. He acknowledged that in his experience, casino cruises are not booked through travel agents. He also testified that the average person who books a cruise with Carnival does so with a good deal of forethought. While the applicable standard in assessing likelihood of confusion is "the typical buyer exercising ordinary caution," when the goods are expensive, the buyer can be expected to exercise greater care in his purchases. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir.1979).

The Defendant points out that about half of SeaEscape's passengers are members of its VIP Club for frequent gamblers. SeaEscape argues its VIP Club members are sophisticated consumers who are not likely to be confused regarding the source of the goods or any affiliation between Carnival and SeaEscape. Aside from its VIP Club members, SeaEscape relies on direct bookings by South Florida residents and tourists.

## E. Similarity of Advertising Media Used

■ The greater the similarity in advertising campaigns the greater the likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1508 (11th Cir.1985), *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 306 (1986). Both Carnival and SeaEscape advertise through print media, as well as through radio and Internet advertisements. However, Carnival engages in national advertising, while casino cruises such as SeaEscape traditionally advertise locally.

## F. Defendant's Intent

■ Although objective factors are most important in assessing the likelihood of confusion between two marks, courts also examine the defendant's subjective intent. *See John H. Harland Co.*, 711 F.2d at 977; *see also Sun Banks of Florida, Inc.*, 651 F.2d at 318–19 ("That a latecomer adopts another's name or mark, deliberately seeking to capitalize on the other's reputation and benefit from the confusion, is an important factor for any court").

The Court finds that SeaEscape did intend to benefit from Carnival's "Fun Ship" mark to some extent. Bruce Yasukochi, SeaEscape's Chief Executive, testified that he was well aware of Carnival's "Fun Ship" mark as he had previously worked as a private auditor of Carnival's account. Yasukochi wanted to reinvent SeaEscape's image from a gambling cruise to one offering a more fully balanced assortment of on-board activities and entertainment. Yasukochi admits that he approved the SeaEscape slogan despite strongly suspecting that Carnival would vigorously prosecute any use of the word "fun." Based on the evidence, the Court finds that SeaEscape, in selecting its new slogan, did intend to benefit to some degree from the "Fun Ship" mark.

The law states that if it can be shown that the defendant adopted the plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be sufficient to justify the inference that there is confusing similarity. *See Frehling*, 192 F.3d 1330, 1336; *John H. Harland Co.*, 711 F.2d at 977. Although this factor weighs in Carnival's favor, the Court does not deem that it is sufficient to find a likelihood of confusion in light of the other factors which favor the Defendant—namely the strength of the mark and actual confusion.

## G. Actual Confusion

■ The Plaintiff concedes that there is no evidence of actual confusion. Proof of actual confusion is not a prerequisite to a finding of likelihood of confusion. *See United States v. Torkington*, 812 F.2d 1347, 1352–53 (11th Cir.1987); *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir.1985). Nevertheless, actual evidence is the best evidence of likelihood of confusion. *See Ross Bicycles, Inc.*, 765 F.2d at 1508.

In the absence of actual confusion, Carnival relies, as plaintiffs often do, upon surveys. The Court overruled SeaEscape's objection to the introduction of the surveys, finding that the surveys' weaknesses in methodology went to the weight of the evidence and not to their admissibility.

The conclusion of the survey was that 41% of those surveyed thought the two slogans—"Fun Ships" and "Ship Full of Fun"—were from cruise lines owned and managed by the same company. Forty-two percent of the respondents thought the slogans were from two different companies.

## H. Summary

■ Even taking into account the survey results, the Court concludes that the average consumer is *not* likely to become confused or deceived as to the source of the product or into thinking that Carnival and SeaEscape are affiliated after seeing or hearing the slogan "SeaEscape to a Ship Full of Fun!"

Following Eleventh Circuit guidance, the Court must give substantial weight to the fact that the Plaintiff is unable, at this time, to prove actual confusion. *See Dieter*, 880 F.2d at 326. Moreover, the lack of similarity between the services offered by Carnival and SeaEscape—namely the distinction between an expensive vacation trip versus a six-hour gambling trip—supports a finding of no likelihood of confusion.

In addition, while the marks are similar to the extent that they both use the words "fun" and "ship," considering the marks as a whole leads the Court to conclude that they are not similar enough to create a likelihood of confusion. Especially persuasive is the fact that the "Fun Ship" mark is used in conjunction with the "Carnival" mark 95% of the time and that the SeaEscape slogan always features the "SeaEscape" name prominently.

Despite the Court's finding that SeaEscape did intend to benefit to some degree from the "Fun Ship" mark, the Court concludes that the Plaintiff has not shown a likelihood of confusion. Therefore, judgment is entered in favor of the Defendant on all trademark infringement claims.[3]

### *TRADEMARK DILUTION*

Carnival also makes a claim under the Federal Trademark Dilution Act of 1995 (the "FTDA"), 15 U.S.C. §§ 1125(a),(c) and 1127. Under the FTDA, the owner of a famous mark is entitled, subject to the principles of equity, to an injunction

---

**3.** The Plaintiff's claim for false designation of origin and false description of goods similarly fails as the "likelihood of confusion test" also applies to that claim. *See Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir.1994); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

against another entity's commercial use of a mark if such use begins after the mark has become famous and it causes dilution of the distinctive quality of the mark. 15 U.S.C. § 1125(c)(1).

■■■ To prove a dilution claim, a plaintiff must provide sufficient evidence that 1) its mark is famous; 2) the defendant adopted its mark after the plaintiff's mark became famous; 3) the defendant's mark diluted the plaintiff's mark;[4] and 4) the defendant's use is commercial and in commerce. *See Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633 (7th Cir.1999); *Avery Dennison Corp. v. Sumpton*, No. 98–55810, 1999 WL 635767 (9th Cir. Aug. 23, 1999); *Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 452 (4th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 286, 145 L.Ed.2d 239 (1999).[5]

The FTDA defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of 1) competition between the owner of the famous mark and other parties, or 2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. This makes trademark dilution analysis fundamentally different from trademark infringement analysis.

■■■ As the Eleventh Circuit explained in *Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018 (11th Cir. 1989),[6] an infringement action is based on the likelihood of consumer confusion between suppliers of competing goods in the same geographic area. *Id.* at 1024. A dilution action, in contrast, is based on the

concept that a strong trademark has value beyond its ability to distinguish a good or service's source. *Id.* A dilution action protects the owners of such strong, distinctive marks from the diminution of consumer goodwill by competitors or non-competitors. *Id.*

Therefore, the Court must first determine whether the "Fun Ship" mark is famous enough to warrant protection under the trademark dilution statute. The FTDA provides a nonexclusive list of factors in order to determine whether a mark is famous:

(1) distinctiveness;

(2) duration and extent of use;

(3) duration and extent of advertising;

(4) geographical extent of the mark;

(5) channels of trade;

(6) degree of recognition of the mark;

(7) nature and extent of the use of the same or similar marks by other parties; and

(8) whether the mark was registered.

*See* 15 U.S.C. § 1125(c).

In order to be famous, a mark must be more than distinctive. *See Avery Dennison Corp.*, 1999 WL 635767. As the Ninth Circuit noted, "[i]f dilution protection were accorded to trademarks based only on a showing of inherent or acquired distinctiveness, we would upset the balance in favor of over-protecting trademarks, at the expense of potential non-infringing uses." *Id.* Therefore, the fact that the "Fun Ship" mark is presumed to have a secondary meaning given its "incontestable" status is not sufficient to render the mark "famous" for purposes of dilution analysis. *See id.*

4. There is a split between the Fourth and Second Circuits regarding whether proof of actual economic harm is necessary to prove dilution. *Compare Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, (4th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 286, 145 L.Ed.2d 239 (1999) *with Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir.1999). Although this is an interesting issue, the Court need not address it as it finds that the "Fun Ship" mark is not famous.

5. *See also Nabisco, Inc.*, 191 F.3d 208, 214 (holding that the FTDA intends distinctiveness, in addition to fame, as an essential element for a claim of dilution); *Avery Dennison Corp.*, 1999 WL 635767 (stating that the FTDA applies only to marks which are both truly distinctive and famous).

6. While *Tally–Ho* involved a claim for dilution under Florida law, the same principles apply to a federal dilution action.

Rather, "'to be capable of being diluted, a mark must have a degree of distinctiveness and "strength" beyond that needed to serve as a trademark.'" *Id.* (quoting 3 J. Thomas McCarthy, *Trademarks & Unfair Competition* § 24:109 (Supp.1998)). To be famous, a mark must be "'truly prominent and renowned.'" *Id.* (quoting *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 46 (1st Cir.1998)); *see also Michael Caruso & Co.,* 994 F.Supp. at 1463 (stating that "[t]o be inherently distinctive, a mark must 'clearly be more than just distinctive in a trademark sense' and must rise to the level of 'Buick' or 'Kodak'").

There is no question that the trademark for "Carnival" is sufficiently famous. However, the same cannot be said of the mark "Fun Ship." Although Carnival has used the "Fun Ship" slogan since the early 1970s and has spent millions of dollars promoting the mark nationally, the Court finds, as the Court in *Avery* did, that the Plaintiff's extensive advertising and sales are not sufficient to establish fame. *Avery Dennison Corp.,* 1999 WL 635767.

As for the degree of recognition of the mark, the testimony, advertising, and survey evidence demonstrate an inseparable association between the "Carnival" and "Fun Ship" marks. While "Carnival" is used alone without "Fun Ship," the term "Fun Ship" is almost never (less than 5% of the time) used without "Carnival." This association results in "Fun Ship" being a much less distinct and less famous mark than "Carnival" and therefore less deserving of protection. Even Carnival's President admits that consumers who see the "Fun Ship" mark by itself would not necessarily associate it with Carnival.

The Plaintiff relies on survey evidence from a 1999 Consumer Tracking Study to show consumer recognition of the "Fun Ship" mark. The Plaintiff points out that when asked if they had heard of the "Fun Ship" slogan, 68% of respondents stated that they had. When asked which cruise line uses the "Fun Ships" slogan, 58% said

Carnival. The Defendant challenges the results of the survey as biased and aided by specific identification of seven cruise line names. It is also noteworthy that one of the qualifications for the respondents was that they be "very or somewhat interested in taking a cruise ship vacation in the next three years." Therefore, it is evident that the respondents do not represent the general public.

The Eleventh Circuit has not addressed whether fame in a particular market is sufficient for a federal dilution claim. However, the Eleventh Circuit did affirm the district court's decision in *Michael Caruso & Co.,* which stated that even if a mark is distinctive in its particular market, it does render it inherently distinctive so as to engender immediate recognition in the general public. 994 F.Supp. at 1463, *aff'd,* 166 F.3d 353 (1998).

The Seventh Circuit recently discussed niche-market fame and held that the district court erred in concluding that the trade dress was not famous based solely on the niche-market status of the product. *See Syndicate Sales,* 192 F.3d 633, 639–640. The Seventh Circuit explained that one of the factors in section 1125(c) for determining fame is "the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought." *Id.* at 640. However, the narrowness of the market in which a plaintiff's mark has fame is a factor that also must be considered in the balance. *Id.* Moreover, as the Seventh Circuit pointed out, the cases recognizing niche-market status were generally cases in which the plaintiff and defendant used the mark in the same or related markets. The Ninth Circuit also recently addressed this issue and explained that specialized fame can be adequate only if the diluting uses are directed narrowly at the same market segment. *See Avery Dennison Corp.,* 1999 WL 635767.

Because Carnival and SeaEscape offer different experiences, they target differ-

ent, although somewhat related, markets. As discussed earlier, Carnival offers vacation trips lasting at least three days and typically seven days, while SeaEscape offers six-hour cruises with gambling being the main draw. While they both offer entertainment, it is clear that Carnival's product is a vacation while SeaEscape's product is a day or evening of entertainment at sea. As mentioned above, Carnival's own marketing representative characterized Carnival and SeaEscape as operating in separate markets: the vacation market versus the day-cruise market.

Given the weaknesses of the survey evidence and the fact that Carnival and SeaEscape do not operate in the same market, the Court finds that even if the "Fun Ship" mark is somewhat well-recognized among individuals planning to take a cruise in the near future, this does not render the mark "famous" for purposes of the dilution analysis.

Third-party use is also relevant to determining whether a mark is famous. *See Avery Dennison Corp.*, 1999 WL 635767. Widespread use of a mark or elements of a trademark makes it unlikely that the mark can be considered famous. *See id.* As discussed above, SeaEscape has provided evidence that the word "fun" is used by many other businesses in the travel, gaming, and entertainment industries. Such third-party use cuts against Carnival's dilution claim. *See also Michael Caruso & Co.*, 994 F.Supp. at 1463 (stating that ex-

tensive third-party use undermines the inherent distinctiveness of plaintiff's mark).

Based on the evidence, the Plaintiff has failed to prove that the "Fun Ship" mark is sufficiently famous to be entitled to protection from dilution.[7] In making this finding, the Court does not fault Carnival for vigorously prosecuting its claims. Indeed, failure to prosecute might limit any future claims of trademark violations. The Court simply limits its finding to the lack of proof of the high degree of fame, easily recognizable by the consumer, that triggers the extraordinary remedy of a dilution claim against the Defendant because of the use of the phrase "SeaEscape to a Ship Full of Fun."

Because the Court finds that the "Fun Ship" mark is not sufficiently famous to deserve the protection claimed by Carnival, the Court need not analyze whether the Defendant's use of the slogan "SeaEscape to a Ship Full of Fun!" diluted the distinctive quality of the "Fun Ship" mark.

Wherefore, judgment is entered in favor of the Defendant on the trademark dilution claims.

## CONCLUSION

For the reasons stated above, it is

ADJUDGED THAT judgment is entered in favor of the Defendant, SeaEscape Casino Cruises, Inc., as to all counts, including trademark infringement, false designation of origin and false description

---

7. This conclusion also applies to the Plaintiff's claim under the Florida Dilution Act, Fla. Stat. § 495.151. Although Florida law does not require the mark to be "famous," Florida courts do require the mark to be "highly distinctive." *See Great Southern Bank v. First Southern Bank*, 625 So.2d 463, 470–71 (Fla. 1993) (adopting trademark dilution principles expressed in the Restatement § 25). Florida law applies many of the same factors used under the FTDA to assess whether a trademark is sufficiently distinctive. *See id.* at 470. Therefore, under the same analysis used above, the Court finds that the Plaintiff's mark is not sufficiently distinctive to merit protection. Under section 495.151, a violation can also be based on a likelihood of

injury to business reputation. *See id.* However, Florida law requires some proof that the use of a trademark decreases the plaintiff's commercial value. *See Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir.1985). Where the mark is a weak one that lacks much distinctiveness, the mere use of a similar mark will not establish loss of commercial value. *See id.* As the Court has determined that the "Fun Ship" mark lacks distinctiveness and the Plaintiff has not shown that SeaEscape's use of the slogan "SeaEscape to a Ship Full of Fun!" has decreased Carnival's commercial value, the Plaintiff's claim under the Florida Dilution Act must fail.

of goods, trademark dilution, and unfair competition.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of October, 1999.