**Charles SMITH, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**Civil Action No. 1:06–cv–526–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 21, 2007.

Elizabeth Lynn Littrell, Gerald R. Weber, Margaret Fletcher Garrett, American Civil Liberties Union Foundation of Georgia, Inc., Atlanta, GA, Paul Alan Levy, Public Citizen Litigation Group, Washington, DC, for Plaintiff.

Claudia T. Bogdanos, Partha P. Chattoraj, Robert L. Raskopf, Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, New York City, Louis Norwood Jameson, Leah J. Poynter, Duane Morris, Atlanta, GA, for Defendant.

## ORDER

BATTEN, District Judge.

### I. Factual Overview

As the world's largest retailer, Wal–Mart is a company that tends to evoke strong feelings, both positive and negative. Plaintiff Charles Smith's feelings fall into the latter category.

To express his opinion of Wal–Mart, Smith first sought to compare the company to the Nazis. He came up with the word "Walocaust," which combines the first three letters of Wal–Mart's name with the last six letters of the word holocaust. He also created various designs and slogans that incorporated the word Walocaust and arranged for them to be printed on t-shirts and other items that could be purchased on his website, www.walocaust.com.

On December 28, 2005 and again on February 1, 2006, Wal–Mart wrote to Smith, asserting that he was violating its trademark rights and demanding that he cease selling all products imprinted with his various anti-Wal-Mart designs. Wal–Mart also objected to Smith's registration and use of the domain name www.walocaust.com.

On March 6, 2006, Smith filed suit against Wal–Mart in this Court, seeking a declaratory judgment that his actions are lawful.

On or about March 8, 2006, Smith also registered the domain name www.

walqaeda.com, on which he offered for sale various items incorporating the word "Walqaeda" as well as other anti-Wal-Mart slogans such as "Freedom–Haters Always" and "Freedom–Hater–Mart."

On April 28, 2006, Wal–Mart answered and asserted various federal trademark claims and related state-law claims against Smith. Wal–Mart contends that Smith has engaged in (1) trademark infringement in violation of 15 U.S.C. § 1114(1); (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) trademark dilution in violation of 15 U.S.C. § 1125(c); and (4) cybersquatting, in violation of 15 U.S.C. § 1125(d).

Smith denies that he has violated any trademark or unfair competition laws, and maintains that his activities are protected by the First Amendment. According to Smith, at stake in this case is a person's right to publicly criticize the world's largest retailer, or any other company for that matter.

To be sure, this case involves a fascinating fact pattern that may raise important questions regarding the intersection between the federal trademark laws and the First Amendment. In due course, the Court will wrestle with these issues. At this stage of the case, however, the Court's focus is on a discovery dispute between the parties.

## II. Discussion

On November 9, 2006, Smith filed a motion to compel, seeking discovery on two subjects: (1) the extent of third-party use of similar marks to those Smith is charged with violating, and Wal–Mart's reasons for challenging Smith while not challenging others; and (2) evidence relating to the reputation that Wal–Mart

charges Smith with injuring through its state and federal trademark claims.

Wal–Mart objected to these discovery requests on the basis that they are unduly burdensome and irrelevant.

On December 20, 2006, the Court held a hearing on Smith's motion. Following the hearing, Smith attempted to pare down the scope of his discovery requests, but his basic position remains the same—he believes that he is entitled to discovery on the two subjects enumerated above.[1]

### A. Third–Party Use

#### 1. Trademark Infringement

Smith first argues that the discovery he seeks pertaining to third-party use is relevant to his defense against Wal–Mart's trademark infringement counterclaim.

To prove that Smith committed trademark infringement, Wal–Mart will have to show that his use of its trademarks is likely to cause an appreciable number of consumers to be confused about the source, affiliation, or sponsorship of Smith's products. *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1178 (11th Cir.1994). In making this inquiry, courts consider a variety of factors, including the strength of the mark that is allegedly being infringed. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335–36 (11th Cir.1999). The stronger the mark (that is, the more the public's recognition of it as an indication of the origin of the products), the greater the protection that it is afforded. *Id.* at 1335. An important factor in gauging the strength of a mark is the extent to which third parties make use of the mark. *Id.* at 1336.

Significantly, Smith concedes that the trademarks for which Wal–Mart seeks

---

1. Additionally, per the Court's instruction, on January 5, 2007, Wal–Mart amended its counterclaims to make clear that with respect to

its federal trademark dilution claim, it seeks to proceed only under a theory of dilution by famishment, and not dilution by blurring.

protection are all very strong. Thus, Smith seeks only discovery regarding third-party usage of *portions* of Wal–Mart's trademarks. Specifically, Smith's revised discovery requests define the "marks at issue" as: (a) "Wal" without the use of "mart"; (b) "mart" without the use of "Wal"; (c) "always" without use of the phrase "low prices"; and/or (d) the smiley face. Among other things, Smith seeks to discover the number of times Wal–Mart has objected to third-party uses of the "marks at issue," how it objected, what the outcome was, as well as third-party uses about which it was aware but did not mount any challenge. According to Smith, such information is relevant to show the weakness of the portions of the Wal–Mart's trademarks that he used.

In opposing Smith's request, Wal–Mart relies upon *AutoZone, Inc. v. Tandy Corp.,* 373 F.3d 786, 794–95 (6th Cir.2004), where the Sixth Circuit explained that the "unit of analysis in considering the strength of the mark is the entire mark, not just a portion of the mark." Based upon this principle, the Sixth Circuit held that the defendant's showing that the mark "ZONE" was pervasively used in the marketplace by third parties had no bearing on the strength of the plaintiffs entire trademark, "AUTOZONE." Thus, according to the *AutoZone* court, the validity and distinctiveness of a trademark is determined by viewing the trademark as a whole. *See also Official Airline Guides, Inc., v. Goss,* 6 F.3d 1385, 1392 (9th Cir. 1993) (same).

Citing *AutoZone,* Wal–Mart argues that any evidence concerning third-party usage of portions of its trademarks is immaterial because the relevant inquiry is whether its

trademarks in their entirety are strong, a point that has already been conceded by Smith.

While Smith acknowledges that *Auto-Zone* undercuts his position, he cites to other cases that suggest a different approach, including *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.,* 130 F.3d 88 (4th Cir.1997), *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1077–78 (2d Cir.1993), *Carnival Corp. v. SeaEscape Casino Cruises, Inc.,* 74 F.Supp.2d 1261 (S.D.Fla.1999), and *Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Ass'n,* 651 F.2d 311 (5th Cir.1981). In these cases, the courts at least suggest that third-party use of a portion of a trademark may be relevant to assess the strength of the entire trademark.

■■■ The Court need not decide which approach is correct because this case stands on vastly different footing than these other decisions. Importantly, Smith has conceded that Wal–Mart's trademarks are strong. By contrast, in the cases cited by Smith, the strength of the plaintiff's trademark was at issue. In such a situation, one could argue that third-party usage of portions of the trademark might be relevant in assessing the overall strength of the trademark. For example, if Smith did not concede that the Wal–Mart trademark was strong, then evidence of widespread third-party usage of the term "Wal" might help him attempt to undercut the notion that the entire Wal–Mart trademark is strong. But because Smith has conceded that Wal–Mart's trademarks in their entirety are strong and distinctive, the existence of third-party usage of portions of those marks is simply not relevant.[2]

---

2. Smith also argues that evidence of third-party use is relevant to show that Wal–Mart has abandoned the marks at issue. However, third-party use and a plaintiff's failure to po-

lice a mark are only relevant when the mark no longer functions at all as an indication of the source of goods and services. *See* 2 J. Thomas McCarthy on Trademarks and Unfair

Additionally, this case is unlike a traditional infringement case because it involves Smith's intentional effort to parody Wal–Mart's trademarks. Indeed, Smith repeatedly admits that he intentionally used Wal–Mart's trademarks and commercially recognizable portions thereof for the purpose of evoking Wal–Mart, and no other entity, in the minds of consumers. In parody cases, courts may deem the mark to be strong based upon the fact that the mark has been intentionally used as a source identifier. *See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 924 F.Supp. 1559, 1570 (S.D.Cal.1996); *Black Dog Tavern Co. v. Hall,* 823 F.Supp. 48, 58 (D.Mass.1993).

Notably, none of the cases upon which Smith relies involved an individual who admitted to intentionally seeking to evoke the trademarks at issue for parody purposes. Accordingly, the Court finds that Smith's concession that he attempted to parody Wal–Mart's trademarks further undercuts his need to obtain any discovery regarding the strength of those trademarks.

Moreover, Smith's discovery requests are unduly burdensome given the fact that Wal–Mart engages in thousands of enforcement actions of its trademarks each year.

Finally, even if third-party use were somehow relevant, Smith would be just as able as Wal–Mart to find the third-party uses that he seeks. For example, Smith may obtain most of the information that he requests through searches on the federal trademark register, the Internet, and nationwide business listings. Indeed, when courts do consider third-party uses in the trademark context, they most routinely do so by considering materials from the federal trademark register or business listings available to the general public. *See, e.g., Golden Bear Int'l v. Bear U.S.A.,* 969 F.Supp. 742, 744–45 (N.D.Ga.1996); *Sun Banks,* 651 F.2d at 316.

### 2. Trademark Dilution

Smith next argues that the discovery he seeks on third-party use is relevant to defending against Wal–Mart's dilution by tarnishment counterclaim. He argues that evidence that Wal–Mart acquiesced to third-party uses of portions of its marks that cast Wal–Mart in a negative light would undermine any likelihood that his own website could tarnish Wal–Mart's marks any further.

■ Dilution by tarnishment recognizes an injury when a "trademark is ... portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39, 43 (2d Cir.1994).

■ Smith does not cite to any authority supporting his theory that evidence of third-party use of a portion of a trademark somehow diminishes the tarnishment injury to the trademark holder. Moreover, even if the Court were to consider third-party use in the context of Wal–Mart's dilution by tarnishment claim, it would only be relevant in evaluating whether Wal–Mart's trademarks are famous and distinctive. *See* 15 U.S.C. § 1125(c)(1) (dilution applies to "famous" and "distinctive" marks). And as explained earlier, Smith does not dispute that Wal–Mart's trademarks are strong, famous, and distinctive. Accordingly, for the same reasons explained with regard to Wal–Mart's trademark infringement claim, Smith's discovery request as it pertains to Wal–Mart's trademark dilution claim is not relevant.

Competition § 17:17, (4th ed.2006). Smith's own admissions deny him the use of an abandonment theory because he has admitted that

Wal–Mart's trademarks are strong and function as an indication of source.

### 3. Georgia's Anti–SLAPP statute

Finally, Smith argues that the discovery he seeks pertaining to third-party use is relevant to determine whether Wal–Mart's state-law counterclaims constitute a SLAPP lawsuit in violation of O.C.G.A. § 9–11–11.1. According to Smith, the discovery he seeks would allow him to determine whether Wal–Mart has failed to pursue comparable users while singling him out for enforcement because of the critical nature of his speech.

 After careful review of the parties' filings as well as hearing oral argument on this issue, the Court finds that Georgia's anti-SLAPP statute does not apply to this case. As the Georgia Supreme Court has explained, the statements from which the alleged SLAPP litigation arises must be made in relation to some official proceeding. *See Berryhill v. Ga. Cmty. Support & Solutions, Inc.*, 281 Ga. 439, 638 S.E.2d 278, 280 (2006). The Court rejects Smith's argument that his usage of phrases such as "Wal–Qaeda" and "Freedom Haters, Always" constitute statements made "in connection with an issue" that is "under consideration or review" in an official proceeding within the meaning of Georgia's anti-SLAPP statute. At bottom, the Court is not convinced that Wal–Mart's state-law trademark counterclaim constitutes a SLAPP suit and if it were, that Smith would be entitled to the discovery he seeks.

### B. Evidence Relating to Wal–Mart's Reputation

Smith's revised discovery request also asks for "[a]ll self-assessments, analyses, reports, studies, or proposals" created by or received since January 1, 2005, by (1) "persons at your corporate headquarters," (2) specified individuals that Smith has identified as "having been hired by Wal–Mart to address its reputational prob-

lems," and (3) "any other consultants retained by you to address issues of your image of business reputation."

In essence, Smith seeks discovery relating to Wal–Mart's own discussions regarding its reputation. According to Smith, such information is relevant to defending against Wal–Mart's claim of dilution by tarnishment and related state-law claims. According to Smith, Wal–Mart has placed squarely in issue its own efforts to protect its reputation and the relative significance of Smith's parodies compared to other threats to reputation that Wal–Mart may have encountered.

 After careful review, the Court finds that Wal–Mart's internal assessment of its reputation and responses to criticism are irrelevant. The relevant measure of a likelihood of tarnishment is how the public, not Wal–Mart, perceives Smith's uses of the Wal–Mart trademarks. *See, e.g., Kraft Foods Holdings, Inc. v. Helm*, 205 F.Supp.2d 942, 948 (N.D.Ill.2002) (tarnishment occurs when "the positive associations that the public once had for plaintiff's product have been 'corroded' and have decreased the mark's value"). Wal–Mart is entitled to enforce its trademark rights as it sees fit. The efforts of Wal–Mart to analyze or protect its reputation in the marketplace do not have any relevance as to whether Smith's uses are likely to injure Wal–Mart's reputation or dilute its marks in the minds of consumers. Moreover, Smith offers no case law to support his assertion that Wal–Mart's internal evaluations of its reputation are relevant to the tarnishment analysis.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to compel [41].